BETTIS, adm'r, vs. TAYLOR.

1. A statute imposing a penalty, must be strictly construed and closely followed, and the form of procedure, and the measure or description of proof prescribed, must be regarded.

2. The act which confers the right on a jury, to impose damages for vexatiously, or for delay, claiming property levied on under execution, (Aik. Dig. 168,) no where requires that the jury, in giving damages, shall express, by their verdict, the causes which influenced them.

3. *It seems*, that a party pursuing a summary remedy given by statute, must conform strictly to the terms of the act, and the conformity must be shewn by the record.

4. *Also*, that in such cases, when submitted to a jury, on an issue, essential facts will either be intended to exist, or will be considered waived :—if the record shew such a compliance with the statute, as is necessary to give the court jurisdiction.

5. Where an administrator detains possession of personal property, to which another has a paramount title, the owner need not proceed against him in his fiduciary character, but may charge him personally :—and the administrator, where the question is litigated in good faith, is entitled to be reimbursed his damages, from the assets of the intestate.

6. And the rule, that he who detains property from the rightful owner, is liable,—is so strict, that, where there are several executors, and one only has possession,—he alone can be sued.

7. And a defendant in *detinue*, is not allowed to give in evidence, as he might do in *trover*, that the property was delivered to him as a pledge.

8. Nor will it avail him, that the property was destroyed, or died after suit brought.

9. Thus, an administrator, who, as such, interposes a claim to property levied on by execution, will be liable, individually,

Bettis, adm'r, *vs.* Taylor.

for the forthcoming of the property, even if destroyed, or if it dies, after the claim is interposed, and the property goes into his possession.

10. *It seems*, that one, interposing such claim, as administrator, while incurring, by the stipulations of his own bond, personal responsibility,—might make good the issue on his part, by showing title in his intestate.

11. Where an administrator, in such case, is forced to expend money, to protect the estate of his intestate—the court that settles his accounts, can do him justice.

12. Where one, voluntarily, with the leave of court, and the consent of a plaintiff in execution, substitutes himself in the place of another, as a claimant in a proceeding to try the right of property—he cannot afterwards be allowed to object, that all this was irregular.

13. In order to comply with the law, authorising executions to be forwarded to other counties, (Aik. Dig. 170,) the sheriff must deposit a copy of the execution in the clerk's office, of the county to which it is sent, and must endorse on it, a copy of the return made by him to the original—and unless this is done, the copy would not, *in itself*, be evidence on a trial of the right of property, in the goods levied on.

14. But the act is merely affirmative, and does not exclude every other mode of proving a copy of the execution. An examined, or sworn copy, is admissible.

15. *Aliter*, where the issue is *nul tiel record*, in which case, the record must be produced, *sub pede sigilli*, or otherwise made authentic, in itself.

16. In a trial of the right of property, the plaintiff in execution need not produce the judgment, on which the execution issued —nor can the claimant be allowed to litigate its regularity or justice; or show that the defendant in execution was dead when it issued.

Error to the Circuit court of Mobile.

Trial of the right of property, before *Pickens*, J.

On the twenty-sixth day of May, A. D. eighteen hundred and thirty-two, the clerk of the Circuit court of Monroe, issued a *pluries* writ of *fieri facias,* directed to the sheriff of Mobile county, requiring him to make of the goods and chattels, lands and tenements of William H. Howell, an amount in damages and costs, said to have been adjudged to the defendant in error by the Circuit court of Monroe, which *fieri facias* was levied on the twenty-fifth of August, eighteen hundred and thirty-two, on certain negro slaves, as the property of the defendant therein; and on the twenty-ninth of September thereafter, they were claimed by James Wilkins, to be the property of Caleb Howell, deceased.   On the last mentioned day, James Wilkins entered into bond with surety; conditioned that the claimaint, as administrator of the estate of Caleb Howell, should have the slaves claimed by him forthcoming, to satisfy the execution, in the event of their liability to the same.   And further, to "pay such costs and damages as may be recovered against him, for putting in such claim for delay."

In the record, and immediately after the foregoing was found, a bond, executed by William J. Bettis, and two other persons, as his sureties, on the twenty-seventh of November, A. D. eighteen hundred and thirty-four, reciting the levy in eighteen hundred and thirty-two, on the negroes claimed by James Wilkins, and conditioned that William J. Bettis, administrator of Caleb Howell, deceased, shall have the slaves forthcoming, to satisfy the execution of the defendant in error, in the event of its being determined, that they are liable to its satisfaction, " and also such costs and damages as may be recovered against him," (claimant.)

Bettis, adm'r, *vs.* Taylor.

Immediately following the above, was another bond, executed by William J. Bettis, and three other persons, as his sureties, on the sixth day of November, A. D. eighteen hundred and thirty-five, reciting, as before, the levy in eighteen hundred and thirty-two, on the negroes claimed by James Wilkins, and conditioned that William J. Bettis, administrator of Caleb Howell, deceased, should have the slaves forthcoming, to satisfy the execution of the defendant in error, in the event of its being determined that they were liable to its satisfaction, "and shall pay such costs and damages, as may be recovered against him (claimant) as aforesaid, for putting in such claim for delay."

An issue was formed as follows: "The State of Alabama, Mobile county, Circuit court, Fall term, eighteen hundred and thirty-four: Henry W. Taylor, plaintiff in execution, vs. James Wilkins, claimant. The plaintiff in execution avers, that the slaves Delsey, and her child, Lydia, and Stephen, are the property of William H. Howell, the defendant in execution, and are subject to the execution of the said plaintiff." Signed by plaintiff's attorneys.

"And the said William J. Bettis, administrator of Caleb Howell, comes and saith that the said negroes were not subject to the satisfaction of said execution, and prays the same may be enquired of by the court," &c. · Signed by attorneys for claimant.

At the term of the Circuit court of Mobile, on the first Monday after the fourth Monday of October, A. D. eighteen hundred and thirty-five, the following order was made: "in this case, came the parties, by their attorneys,

Bettis, adm'r, vs. Taylor.

and it appearing to the satisfaction of the court, that at a previous term of this court, to wit, at the Fall term, eighteen hundred and thirty-four, thereof, William J. Bettis was admitted as administrator of said estate of Caleb Howell, deceased, defendant, to defend said suit—which order of the court was failed to be entered. It is ordered by the court, that said order be entered now as of said term; and thereupon came the said William J. Bettis, and filed his bond, which being objected to by the plaintiff, is ordered by the court now here to be filed; and for sufficient reasons appearing to the court, from the affidavit of the claimant, it is ordered, that this cause be continued."

And the cause being continued until the first Monday after the fourth Monday in October, A. D. eighteen hundred and thirty-six,—at a term of the Circuit court of Mobile county, then holden, was submitted to a jury, upon the issue joined, who, by their verdict, found the slaves in question subject to the plaintiff's execution, and ascertained the value of each; and further found "ten *per cent* damages, on the amount of the execution, amounting to one hundred and seventy-eight dollars, and eighteen cents."

The record then, after an entry of judgment, in the usual form, as it respected the slaves, proceeded: "and the said plaintiff recover of the said defendant, the sum of one hundred and seventy-eight 18-100 dollars, the damages aforesaid, assessed by the jury aforesaid, and his costs, in this behalf expended," &c.

On the trial, the presiding judge, at the instance of the claimant, sealed a bill of exceptions; from which it

Bettis, adm'r, vs. Taylor.

appeared, that the plaintiff in execution offered in evidence a paper, purporting to be a copy of the execution levied on the property in controversy, though it was not certified to be a copy, and was objected to by the claimant.

The plaintiff in execution then introduced a witness, who stated that he levied the original execution, and had the same in his hands, when this claim was interposed: immediately thereafter, he made out the copy now offered, and filed it in the office of the clerk of the Circuit court of Mobile, and returned the original to the office of the clerk of the court, from which it issued. The witness further stated, that at the time of the levy related by him, he was a deputy sheriff, but that the term of office of his principal, had since expired. This evidence was objected to by the claimant, his objection overruled, and the copy read to the jury.

The plaintiff then proposed to read to the jury the execution, without producing the judgment on which it purported to have issued. To this the claimant objected, but his objection was overruled, and the execution read accordingly.

The plaintiff then read to the jury a transcript of the record of the suit on which the execution issued, which contained no judgment, but a mere *memoranda*, stating that there was a verdict for plaintiff for a sum certain, (expressing it,) followed by these words: "judgment for plaintiff;"—whereupon the claimant moved the court to instruct the jury, that "as it was shown by the record that there was no judgment rendered on the verdict in said cause, that they must find for the claimant." Which

8 P.                    72

instruction was refused by the court, who expressed the opinion, that it was immaterial to the issue, whether there was a judgment or not.

The claimant, on his part, moved that the defendant in execution was dead, at the time the execution issued, and thereupon moved the court to instruct the jury, that for that cause, the same was void, and that the jury, if satisfied of the fact of his death, must find for the claimant; which instruction the court also refused.

The claimant offered to prove further, that the judgment had been satisfied by the defendant in execution, but the court refused to admit such evidence, on the ground that it was not material to the issue, which merely litigated the fact, whether the property in controversy, as against the claimant, was liable to the debts of the defendant in execution.

Whereupon the claimant excepted to the opinion of the court, in the several points presented by the bill of exceptions; and, to revise the same, and other questions of law, arising upon the record, the plaintiff in error, as administrator of William J. Bettis, who has died since the rendition of judgment by the Circuit court, prosecuted his writ of error to this court.

The assignments of error were:

1. The court erred in rendering judgment against William J. Bettis, *de bonis propriis,* whereas he was but an administrator.

2. The court erred in rendering judgment for damages, against the said William J. Bettis, who was not responsible therefor.

3. The court erred in proceeding to trial, when the

Bettis, adm'r, vs. Taylor.

cause had been discontinued, as to the defendant, Wilkins.

4. The court, erred in the several decisions made; as shewn in the bill of exceptions, in receiving and rejecting evidence, in instructing the jury, and in refusing, as requested by the claimant.

5. That the court erred in the rendition of the judgment shewn in the record.

*Stewart*, for plaintiff in error.
*Campbell*, contra.

COLLIER, C. J.—The assignment of errors lead us to consider—

First—The regularity, in point of law, of the verdict and judgment against William J. Bettis, as rendered upon the trial of the right of property.

Second—Whether William J. Bettis, was legally a party to the proceeding in the Circuit court.

Third—The correctness of the several decisions of the judge of the Circuit court, pending the trial before the jury.

First—The plaintiff, in the first place, objects to the judgment of the Circuit court, because the jury find ten *per cent* damages on the amount of the execution, in favor of the defendant in error, without declaring by their verdict, that the claim of property was interposed "for purposes of vexation or delay." The section of the statute which confers the right to impose damages, in such a case, is as follows: "In all trials of the right of property, as aforesaid, when the jury may be of opinion

that the claim was made to said property for purposes of vexation or delay, they shall have power to give such damages as the case may require, not exceeding fifteen *per cent* on the amount of the execution."

It is a clear rule, that a statute imposing a penalty, must be strictly construed, and closely followed in its application. The court cannot lessen or increase the penalty, and if the form of procedure,—the measure or description of proof, are prescribed,—they must be regarded, or the statute itself cannot be allowed to operate —(Broadwell vs. Conger, 1 Penning. R. 210 ; Fairbanks vs. Antrim, 2 N. Hamp. R. 105.) Now, the act no where requires that the jury, in giving damages, shall express, by their verdict, the causes which influenced them ; but it declares the *only* causes that could authorise such verdict, and, guided by reason, we are bound to suppose, that they did not usurp a right, but honestly entertained the opinion, that the claim to the property in controversy was made " for purposes of vexation or delay."

But it is insisted for the plaintiff, that the case of Logwood vs. the Huntsville Bank, (Ala. Rep. 23,) and the subsequent cases in this court recognising it, are authorities, to shew the judgment in the case at bar to be erroneous. The case mentioned, was a proceeding by notice and motion, under the charter creating the bank ; and the court only decide, that a party, pursuing a summary remedy given by statute, must conform strictly to the terms of the act, and the conformity must be shown by the record. That case, it may be remarked, was a judgment by default : had it been submitted to the jury on an issue, several facts, supposed to be essential, would

Bettis, adm'r, *vs.* Taylor.

either have been intended to exist, or else have been considered as waived, and the record then need only have shown such a compliance with the statute, as was necessary to give the court jurisdiction. The dissimilarity of the two cases is strikingly apparent;—in that cited, the record did not discover that the court had jurisdiction of the proceeding—in the case at bar, the right of the court to hear and determine the case, was undeniable. Again : the one is a case *stricti juris*, while the other is governed by more liberal rules.

We have shown that penal statutes are subject to a strict construction, yet the application of the rule will not sustain the objection. On trials at the Circuit, the judge informs the jury, that if, in their opinion, the claim of property was made for purposes of vexation or delay, they are authorised to give such damages as they may think proper, not exceeding fifteen *per cent* on the amount of the execution. When the jury return to the court their verdict, by which they assess damages, not exceeding the *maximum* authorised, they declare what, in their opinion, is the appropriate measure. More than this surely cannot be necessary, in order to legalise their action.

In Rountree vs. Smith, (1 Stew. R. 157,) it was held, in an action against a sheriff for the escape of a debtor, that the jury should expressly find, that such debtor or prisoner did escape with the consent, or through the negligence of the sheriff, or that such prisoner might have been re-taken, and the sheriff and his officers neglected to make immediate pursuit. This case, however, bears no analogy to the one at bar, for the statute, in *totidem verbis*, requires such to be the *expressed* finding of the jury.

It is further objected, that the judgment is irregular, in being rendered against William J. Bettis, in his individual capacity, for damages and costs, instead of directing the amount to be levied *de bonis intestatis.* Our statutes no where, in express terms, authorize the claim of property levied on, to be made by an executor or administrator, so that the question of the personal liability of the claimant, must be determined by a reference to the fitness of the thing, and the analogies of the law. It cannot be denied, even if an administrator incurs a personal responsibility, according to the stipulations of his bond, that he may make good the issue on his part, by showing title in his intestate —(Mansell vs. Israel, 3 Bibb's Rep. 510.)

To test the question by analogy,—suppose an administrator to detain, in that character, the possession of personal property, to which another person had a paramount title. The true owner is not forced to the necessity of asserting his right to the *thing* against him in his fiduciary character, but may charge him personally, upon the ground of his possession. And in this there is no hardship, for the administrator may retain possession, to enable him, if a recovery is had against him, to restore the property to its rightful owner.

In respect to the damages for a detention, in legal contemplation, the use of the thing would afford an adequate indemnification, and if the question of title was litigated in good faith, to protect the rights supposed to pertain to the intestate's estate, the administrator, though primarily liable, might look to that source for reimbursement.

If the law were otherwise, it would frequently operate

Bettis, adm'r, vs. Taylor.

injuriously to the true owner of property.   Was the administrator only chargeable in his representative character, the estate of the intestate could alone be resorted to, and if the property was disposed of in the course of administration, before the determination of the suit against the administrator, so that it could not be reached, the owner would be referred to the estate of the intestate, and if that were insolvent, he would come in as other creditors.   But the insolvency of the administrator, when charged in his own right, cannot work a loss to the owner, as the law authorises the delivery of property to the plaintiff, immediately on commencing his suit, upon his indemnifying, by bond and surety, the defendant; unless the defendant himself will execute a bond, with surety, to have the property forthcoming, to satisfy such recovery as may be had against him.

The rule, that he who has the possession of property, which he detains against the rightful owner, is liable to an action,—is so strict, that it has been holden, where there are several executors, and one only has the possession, he alone must be sued--(3 Starkie's Evi. 494; 1 Saund. on Pl. & Evi. 456.)   And a defendant will not be allowed to give in evidence, in the action of *detinue*, (as he may in *trover*,) that the property was delivered to him as a pledge—(Starkie on Evi. 495; Bull. N. P. 51.) Nor will it avail him any thing, to show that the property was destroyed, or died after suit brought—(Skipper vs. Hargrove, Martin's No. Ca. Rep. 74.; Carroll vs. Early, 4 Bibb's R. 270.)

Now, in the case at bar, the claimant received the possession of the slaves levied on, and stipulated to pay such

Bettis, adm'r, vs. Taylor.

costs and damages as might be recovered against him, so that the slaves may be had forthcoming to satisfy the execution, if they are living; and if they are dead, it is right that it should be satisfied out of his estate, as he wrested them from its operation. So far as it respects the damages, it cannot be material, even in an equitable point of view, whether he is indemnified to that extent: the jury, by their finding, have said that the claim of property was not made in *good faith.* The costs rest upon the same ground, and does not prove that the judgment is erroneous. If the administrator, in such a case, is aggrieved, by being forced to expend money to protect the estate of his intestate, the court that settles his accounts can do him justice.

Second—In regard to the second point, we think it cannot be seriously argued from the record, that the proceeding in the Circuit was discontinued by James Wilkins, or that William J. Bettis was not legally a party. Bettis voluntarily, by the assent of the court, and with the consent of the defendant in error, was substituted for Wilkins, and it is not for the plaintiff in error now to object, that all this was irregular—*consensus tollit errorem.*

Third—The execution levied on,—the property claimed, it may be repeated,—was from "another county," so as to render its return there necessary. The statute, so far as applicable to such a state of case, is as follows: "Wherever property shall be levied on by virtue of an execution from another county, if the same shall be claimed, and bond given to try the right thereof, the trial shall be had, as heretofore, in the county where the levy

Bettis, adm'r, *vs.* Taylor.

shall have been made, and it shall be the duty of the sheriff to return the execution to the court from which it issued, with his return endorsed, and to make out a copy of the same, and of his return, and return such copy to the Circuit court of the county in which the levy shall be made, and the copy of such execution, shall be sufficient for the court to proceed on, and try the right of the property levied on." In order to a compliance with this law, it is not only necessary for the sheriff to deposit a copy of the execution in the clerk's office of the court to which the papers pertaining to the trial of the right of property are returnable, but he must also endorse a copy of the return made by him to the original: unless this be done, the copy made by the sheriff will not be evidence *in itself*.

The act, however, it may be observed, is merely affirmative, and does not necessarily exclude every other mode of proving a copy of the execution, so that the question arises, whether the proof made, as shown by the bill of exceptions, was sufficient for that purpose. The deputy sheriff, who levied the execution, states that the paper offered as a copy, was made by himself, and that he regularly returned the original to its proper depository. It was, then, an examined or sworn copy, and according to all authority, is admissible on an issue to the jury. The law is otherwise, where the issue is *nul tiel record:* there, the record must be produced *sub pede sigilli*, or otherwise made authentic within itself, and if it be of the same court, it has been sometimes (though not uniformly) held, that the *record itself* must be inspected —(2 Bacon's Ab. 612; Burk's ex'ors vs. Treggs' ex'ors, 2

8 P.                    73

Wash. R. 215; 2 Saund. on Pl. & Ev. 755, 756; 1 Stark. Ev. 155, 156, 157; Geohegan vs. Eckles, 4 Bibb's R. 5.)

The remaining questions arising on the bill of exceptions, are believed to have been settled by the decisions of this court.

In Carlton et al. vs. King, (1 Stew. & Por. R. 472,) it was decided, that on the trial of the right of property, it did not devolve upon the plaintiff in execution, to produce the judgment on which the execution issued.

The case of Hooper vs. Pair, (3 Porter's R. 401,) was a trial of the right of property; and the court say, that the statute regulating the proceeding, directs that the issue shall be so formed as to try the right of property; and it was framed in such terms as to present the question, whether the property, at the time of the levy, was subject to the satisfaction of the execution; that the statute did not authorise an issue, which would allow the claimant to litigate the regularity or justice of the judgment of the plaintiff in execution.

In Collingsworth vs. Horn, (4 Stew. & Por. R. 237,) the claimant objected to a *pluries* execution, on the ground that the defendant therein, was dead at the time of its issuance. The court held, that the objection was not available for one who was a stranger to the execution, and that being preceded by an *original* and *alias*, was not absolutely void.

The case of Perkins and Elliott vs. Mayfield, (5 Porter's R. 182,) following what was supposed to be the settled law of this court, decided that the claimant could not be allowed to insist, that the judgment was too defective to authorise an execution to issue. And in Boren et al. vs.

McGehee, (6 Porter's R. 432,) it was determined, that a defendant in execution could not object against a *bona fide* purchaser, at a sale made under it, that the judgment was satisfied before the sale, though the satisfaction did not appear of record.

These cases are deemed decisive of the present, and it only remains to say, the judgment is affirmed.