## VAUGHN v. WOOD.

1. An absolute bill of sale was made of a slave, who was hired out for twelve months, more than half of which time was unexpired; the vendor retained possession for a year, or perhaps more, after the time of hiring—the vendee, repeatedly admitting that the greater part of the purchase money was unpaid, and that the vendor was entitled to the slave until it was paid : *Held*, that whatever might be the legal effect of the bill of sale upon the rights of the parties, the facts warranted the inference, that the vendor's possession was under a contract creating a pledge or lien.

2. The admission in a bill of sale, that the purchase money was paid, is not conclusive against the vendor, and will not be allowed to defeat a promise subsequently made for its payment, so as to invalidate a lien given to him.

3. Service of the writ is a sufficient demand in an action of detinue. It may be necessary to prove a previous demand, where the plaintiff seeks to recover damages from a day before suit brought.

4. Where there is conflicting evidence upon a point, no matter how strongly it inclines to a certain conclusion, the court should refer it to the jury to determine what it proves.

Writ of Error to the Circuit Court of Shelby.

This was an action of detinue, brought by the plaintiff in error, against the defendant, for the recovery of a female slave, named Mahala, aged about twenty-two years, and her two infant children, the one about two years, and the other about one year old. The cause was tried on the general issue, and a verdict returned for the defendant, on which a judgment was rendered against the plaintiff for costs.

On the trial, the plaintiff excepted to the ruling of the presiding judge, in the refusal to charge the jury, and in certain charges given, as hereafter shown. The plaintiff introduced, and proved · a bill of sale from Lucy Hester, to himself, dated the 10th February, 1839, in which she acknowledged to have received of him five hundred dollars in full payment for the slave Mahala, in consideration of which, she (in the language of the bill of sale) warranted and defended the title to Mahala, to him, to his heirs, &c., against herself and every other person. He also proved, that at the time the bill was executed, Mrs. Hester was the owner of the

slave, and that he paid her fifty dollars in paper, the remaining four hundred and fifty dollars she required in specie, which the plaintiff not then having, he agreed to pay in a short time.

Evidence was also adduced tending to show, that Mahala was to remain in Mrs. Hester's possession until the plaintiff paid her the balance of the purchase money; and that some short time after the execution of the bill, the plaintiff went to the defendant, who had hired the slave for twelve months, with a request or order, that he would deliver her to the plaintiff if he was willing to rescind the contract of hiring. But the defendant refused to accede to the request. On the 15th September, 1840, Mrs. Hester sent a letter to the plaintiff, by her brother, informing him, that the defendant was willing to give up Mahala, and urging him to come immediately and take her, and pay the money for her, or deliver up the bill of sale and receive his money back. A short time after this letter was written, the plaintiff came from his home in Coosa county, to the defendant's residence in Shelby, where Mrs. Hester resided, and presenting something to her in a bag or bags, said (in the language of one witness, " Aunt here is your money, count it." Two other witnesses, speaking of the same interview, stated that when the plaintiff presented the bags, he said to Mrs. H. that he wished, or expected her to take two hundred dollars that was coming to him from his grand-mother's estate, and the residue he would pay in specie ; this was refused by her, and she in turn offered to refund him in specie, the fifty dollars, with interest, which she had previously received of him. A second interview was proved to have taken place the same day in which Mrs. H., proposed to receive the four hundred and fifty dollars in specie, and give up the slave; to this offer, the plaintiff replied by offering to pay two hundred and fifty dollars in specie, if she would take the residue in a claim on his grand mother's estate—but this she declined.

Mrs. H. retained the possession of Mahala, up to the time of her death, which occurred at defendant's house. The defendant offered to prove that he was executor of Mrs. H., by producing her will, and letters testamentary to him thereupon; this evidence was objected to by the plaintiff, but admitted by the court. *Further*, it was proved, that Mahala, was sold by the defendant as executor of Mrs. H., before this suit was brought ; that the plaintiff exhibited his bill of sale and bid for the property, although

he first forbid it to be sold. *Lastly*, it was shown that the defendant had a knowledge of the facts which transpired in the interview between the plaintiff and Mrs. H., at his house. The value of the slaves in controversy, and the birth of the children since the bill of sale was executed, were shown. This was all the evidence in the cause.

The plaintiff's counsel moved the court to charge the jury, that the bill of sale by Mrs. H. to the plaintiff invested him with the absolute ownership of Mahala,—both the right of property and possession, and it was not competent to show, by parol proof, that the sale was conditional. This charge was refused by the court, who charged the jury, if they believed from the evidence, that it was the agreement of the parties at the time the bill of sale was executed, that the slave was not to be delivered until after the payment of the balance of the purchase money, then the bill of sale did not invest the plaintiff with the absolute ownership, and he had no right to recover possession until he paid, or offered to pay, the balance due upon the purchase.

The plaintiff requested the court to charge the jury, that the sale by the defendant was such a conversion of the slaves by him, as rendered a demand unnecessary to support the action. This charge was refused by the court.

The plaintiff also requested the court to charge the jury, that conceding the necessity of a demand, the exhibition by him of his title, and forbidding a sale, when the slaves were sold by the defendant, amounted to a demand in point of law. This charge was refused by the court, who charged the jury, that if they believed the sale from Mrs. H. was conditional, and that he had not made a legal tender of the residue of the purchase money, then, the defendant's possession of the slaves, as executor of Lucy Hester, was a lawful possession, and it would require a special demand with a legal tender of the balance of the purchase money to enable the plaintiff to maintain this action. And even if they believed the tender to Mrs. H. was a legal tender, yet as defendant was her executor, a special demand and tender was necessary to support the action against the defendant individually.

Moody, for the plaintiff in error.
Peck, for the defendant.

COLLIER, C. J.—The view which we take of this case renders it unnecessary to inquire what, in point of law, was the effect of the bill of sale made by Mrs. Hester, to the plaintiff, or rather, whether it transferred not only the right of property, but a right to the immediate possession. From the evidence recited in the bill of exceptions, it is apparent, (in fact not disputed) that the slave Mahala, was hired out at the time the contract was made; that Mrs. Hester, more than eighteen months thereafter, wrote a letter to the plaintiff, urging him to come and pay the purchase money and take her away; that the plaintiff, by his acts, as well as what he said, admitted the right of his vendor to retain the possession until four hundred and fifty dollars, due on the purchase, was paid or tendered. Now, even conceding that the bill of sale gave a legal right to demand the slave by suit, without the performance of any previous act on the part of the plaintiff, yet the permitting of Mrs. H. to retain her, and the admission of her right to do so, until the purchase money was paid, afford irresistible evidence, that Mrs. H. held her under a contract, creating a pledge or lien. Nor can it be objected to this proof, that it shows a parol stipulation, made contemporaneously with the bill of sale; for, even if it was then made, it was afterwards repeatedly acknowledged, and each acknowledgment may be regarded as giving validity to a contract, which in its inception, was binding, in morals, at least. [See Long on Sales, 188.]

The admission in the bill of sale, that the purchase money had been paid, is not conclusive against the vendor, and could not be set up in bar of an action brought for its recovery, much less can it be allowed to defeat a promise subsequently made for its payment, so as to invalidate a lien given to the seller. [See 2 Phil. Ev. C. & H's notes, 217, and 3 Id. 1441, and cases there cited.]

Proof of a demand of the slaves previous to the commencement of the suit, was not necessary to entitle the plaintiff to his action. The service of the writ is a sufficient demand in detinue, and it is only necessary on the general issue, to prove an anterior demand, to entitle the plaintiff to damages from a previous day. [Shepard's adm'rs, v. Edwards, 2 Haywood's Rep. 186; Tunstall v. McClelland, 1 Bibb's Rep. 186.]

The instruction then, prayed by the plaintiff's counsel, on this point, should have been given to the jury.

One of the witnesses examined at the trial, stated facts from

which a jury might have inferred a tender and refusal, viz: when the bag, or bags, said to contain the specie to pay Mrs. H. the amount due for the slaves, was thrown down, and she was requested to count the money, she refused to receive it. Now, the testimony of this witness, should have been disregarded by the jury, opposed as it was by the other witnesses, if they were equally respectable; and the evidence in respect to a subsequent offer to deliver up the slaves upon the payment of four hundred and fifty dollars, if credited, would have entirely done away the effect of a previous tender. Yet it was a question of fact for the solution of the jury, whether the tender was dispensed with, or made, or whether any, and which of the witnesses was entitled to the highest degree of credit, and the jury might have concluded that the tender was sufficient. It cannot be assumed, that the plaintiff has not been prejudiced by the charge, that a demand should have preceded the action, and was indispensable to its maintenance, for though the jury may have been satisfied that he made a tender, or was excused by the defendant's refusal made in advance, from making it, yet they would have been obliged, from the absence of proof of a demand, to find for the defendant. It is then clear, that the circuit judge committed a fatal error, in instructing the jury, that evidence of a fact, not at all material, should have been adduced to entitle the plaintiff to their verdict.

We regret the necessity of reversing the judgment in this case, as justice has probably been done between the parties. But we have no discretion in the matter.

The judgment is reversed, and the cause remanded.