## BELL v. PHARR, ET AL.

1. In an action of detinue for slaves, the omission to ascertain the value of each slave by the verdict of the jury, is an error affecting the judgment, although the defect of the verdict is in valuing a mother and children, or children of the same mother together.
2. The identity, and value of slaves, are questions solely for the jury, and any evidence bearing on these points is proper.
3. Where a title to slaves is dependant upon the default of the grantor in not paying a specified debt, if there is a default, the extent of it is an immaterial inquiry.
4. Where receipts have been given by agents, they may be called as witnesses, and it admits of question if proof of their hand writing can be given; but such evidence is clearly not proper, without showing the receipts were in existence, or signed at the time when the authority continued.
5. There seems to be no reason why a recovery may not be had in an action of detinue, for a slave who dies pending the suit.
6. Actions of detinue involve the title to the chattel, at the commencement of the suit, and the writ is a sufficient demand.

Writ of error to the Circuit Court of Talladega.

DETINUE by Pharr, and Beck, v. Bell, to recover certain slaves. The declaration describes most of the slaves by their names and ages, but in some instances, when describing children, omits their names. As thus, Harriet, a woman about twenty-four years old, and her four children, viz: a boy about eight years old, a boy about six years old, and two other younger children of the said Harriet. And again: Milley, a girl, about nineteen years old, and her two children, viz: a boy about two years old, and her infant child. The separate value of each slave is not stated, but the allegation is, that together they are worth $12,000.

A demurrer was filed to the declaration, but there seems to have been no action upon it. The general issue is also pleaded, on which a trial was had.

At the trial, the plaintiffs offered in evidence a deed, executed by all the parties, on 17th August, 1839, by which deed Bell conveyed to Pharr and Beck certain lands and slaves, for the

purpose of securing them in the payment of certain notes described therein, due at intervals of one year from the 1st January, 1840, until the 1st January, 1845. The deed contains terms granting a personal estate in the lands and slaves, and is upon the trust and condition, that if Bell should fail to pay off and discharge, and as often as he should fail to do so, any of the notes therein described, as they should become due and payable, the said Pharr and Beck, or either of them, or their legal representatives, or either one of them, should take the property therein described into possession, or so much thereof as should be of value sufficient to pay off and discharge the note or notes, and all interest thereon, which may be due and unpaid, and after giving a prescribed notice, set up and expose the same property, or so much thereof as would be of value sufficient to pay off the note or notes then due. It also provides that this may be done as often as a default may happen, and that until a default should be made, Bell should continue in possession, &c. and if the whole number of notes should be paid without default, then the deed was to be void, otherwise to remain in full force.

The defendant objected to reading the deed, but the objection was overruled. The plaintiffs then proved, and read to the jury, several promissory notes, the same as are described by the deed. The plaintiffs next introduced a witness, who proved, that he, as deputy sheriff, executed the writ in this case, but never had the slaves in actual possession, nor had he seen them all; that at the execution of the writ, he took the bond on file, (a delivery bond required to be given in statutory actions of detinue;) that the names and descriptions of the slaves in the bond were given to him by Bell, and made out under his directions; and that Bell said the slaves were on his plantation in Talladega county. During the same conversation, Bell, said, the slaves belonged to his daughter-in-law—a young lady who lived in the house with him—but that her claim, he believed, was forfeited, for want of registration in time. The same witness also testified, he did not know all the negroes—that he knew some of them, and those that he knew were very likely.

The sheriff and his assistant who went to seize the slaves sued for, testified that when they called for them, Bell some-

Bell v. Pharr, et al.

times refused, and at other times agreed, to surrender them; he hesitated for two days, but finally sent his overseer for them; afterwards he called him back, and said he would give bond, which he did, with the descriptions before spoken of.

Another witness was called for the plaintiff, and asked if he knew the slaves mentioned in the writ? This question was objected to, but allowed by the Court to be answered. He answered that he knew part of the slaves, and such of them as he knew were a very likely lot. When the witness came to the names of such as he did not know, he was asked the value of likely slaves of the ages mentioned in the bond. This question the defendant objected to, but the Court allowed it to be answered.

The same witness also testified that the slaves known by him, and of which he spoke, were, for the time when he knew them, in the possession of the defendant.

The defendant gave evidence tending to show he was entitled to payments, and discounts upon the notes, which had been put before the jury, and which payments and discounts did not appear on the notes. He proved that he kept a boarding house and tavern at the Talladega mineral springs—that the plaintiffs, with their families, spent a portion of some three or four seasons with him, and gave evidence tending to show the amount and value of their board. The plaintiffs then offered in evidence their receipts, which they proved had been executed by persons who, at the time the receipts bore date, were the bar keepers for Bell, at his tavern, and that they were authorized to make settlements for tavern bills. The defendant objected to the reading of these receipts, but the Court admitted them.

It was shown in evidence, that one of the slaves sued for, had died after the action.

On this state of proof, the Court instructed the jury—

1. That the death of the slave after action brought, did not bar a recovery.

2. That to entitle the plaintiff to recover, the jury must be convinced, the slaves sued for, were those mentioned in the trust deed—that they were in the possession of Bell when the suit was commenced, and that there was a default by him in the payment of the notes set out in the deed of trust.

3. That it was unnecessary for the plaintiff to prove a demand of the slaves before action brought, but that the plaintiff could only recover so many of the slaves as should be clearly sufficient to pay so much of the indebtedness secured by the deed as was due, and unpaid, at the time the action was commenced.

4. That Bell was estopped by the execution of the trust deed, from asserting that the title to the slaves was in another.

5. That if the jury found for the plaintiff, their verdict should specify what particular slaves they so found, describing them by their names and ages, and assess the separate value of each one.

The defendant excepted to these several charges, as well as to the ruling of the Court upon his several objections to the evidence, questions and answers.

A verdict was returned by the jury in favor of the plaintiff, in which most of the slaves are designated by names and ages, and their value ascertained separately, but in several instances women and children are valued together, as thus: Harriet and two children, $1,100 ; two children of Harriet born since the execution of the trust deed, $300; Milley and two children, $1,000; Mary and two children, $900; Lucinda, $600, and two children, $300.

The defendant moved in arrest of judgment, that the verdict is uncertain, in not finding that the slaves are the same as sued for, and in not finding their separate values. The motion was overruled and judgment rendered on the verdict. In the judgment entry, the uncertainty of the verdict as to the identity of the slaves does not appear, but the assessment of their values appears in the same manner as before stated.

The errors are assigned in this Court by the defendant, upon all the questions raised by the exceptions, and also assigns that the judgment is erroneous in not ascertaining the value of each slave separately.

L. E. PARSONS and S. F. RICE, for the plaintiff in error, made the following points :

1. The slaves to which the evidence referred was not shown to be the same as those conveyed by the deed.

2. The value of each slave ought to have been proved,

Bell v. Pharr, et al.

therefore it was improper to admit the question as to what the value of *likely slaves* was, the witness not knowing all of those said to be of this description.

3. The receipts ought not to have been read as evidence without proof that they were made at the time they bear date. [Baker v. Blackburn, 5 Ala. Rep. 417.]

4. There can be no recovery of a slave, which the evidence shows to be dead at the time of trial.

5. The action was premature, without a demand of the slaves, as the deed provides for the retention of the possession by Bell until default. The possession being lawful, could not be made otherwise, until a refusal to deliver, after the default.

6. Bell is not estopped by his trust deed, from showing that the title to the slaves is in another, especially when his own deed conveyed no title as against his ward, for whom he was bound to protect the property. The possession held by him was, in law, the possession of his ward. [Foster v. Goree, 5 Ala. Rep. 424.]

The judgment is clearly wrong in not ascertaining the separate value of each one of the slaves. [Brown v. Brown, 5 Ala. Rep. 508; Cummings v. Tindall, 4 S. & P. 357; Haynes v. Crutchfield, present term.]

W. P. CHILTON, contra, insisted that many of the questions raised in this case, were covered by previous decisions. White v. Ross, 5 S. & P. 133, and Bettis v. Taylor, 8 Porter, 564, are conclusive that the death of a slave after suit, does not discharge the action.

No demand was necessary. [Vaughan v. Wood, 5 Ala. Rep. 304.]

As to the omission to ascertain the value of each slave separately, he conceded it to be erroneous, unless the peculiar condition of the slaves, as children, authorizes each to be valued with the mother. The law does not favor a separation when the children are of tender years. [McLane v. Spence, 6 Ala. Rep. 894; Cannon v. Jenkins, 1 Dev. Eq. 422; Fitzhugh v. Forte, 3 Call, 13.]

The rule itself, however, is not inflexible, for a flock of sheep is valued entire. [10 Coke, 119; 6 Litt. 104.]

GOLDTHWAITE, J.—The omission of the jury to ascertain the several values of all the slaves, covered by their verdict, being carried into the judgment, is a fatal defect, and was so held in an action of the same kind for the recovery of patents for land, in the case of Cummings v. Tindall, 4 S. & P. 357; and afterwards in Haynes v. Crutchfield, *supra.* It is certainly true, that our Courts have never recognized any course of proceeding; tending to authorize a forced separation of children of tender years from their parents, when slaves; but no such principle seems involved here, as the contingent value is for the protection of the defendant, if the thing recovered is incapable of being produced. The plaintiff by his writ of distringas can always compel the delivery of the specific thing, and a Court, most probably, would feel constrained to allow him to pursue his remedy by that mode of enforcing the judgment, unless it was informed its use could be only vexatious. In Buller's Nisi Prius it is said if no value is found, the defect cannot be supplied by a writ of inquiry.

As this error will cause a reversal, we shall only consider the other questions raised, so far as they may again enter into the case, for the reason that most, if not all, are so presented as to leave it doubtful if they enter into the final judgment.

2. As to the identity of the slaves and their respective values, these are questions to be determined solely by the jury, and the Court could not properly reject any evidence bearing upon these points. Some of these slaves were proved to be likely, whether all were so, or were of the same or different values, was a fair subject of discussion to the jury, but the defendant has no reason to complain of inferences against him, when the means certainly were within his power, of stripping all uncertainty from this part of the case.

3. The objection to the reading of the receipts to the jury we, perhaps, should feel constrained to disregard, inasmuch as it did not point specifically to the question of law discussed here; and it is as strongly inferable that the Court's attention was not drawn to the omission, to show the papers were made by the persons signing them, *at the time,* when they had authority from the defendant to act for him. There is another reason why, even if there was error in this admission of the evidence, the error cannot avail the defendant. It is, that the .

whole inquiry into the extent of the default, if there was one, was immaterial. The deed authorized the plaintiff to take possession upon the happening of any default, and their right to do so, could only be gainsayed by showing an entire payment.

4. There is no question but that the several persons who gave the receipts, would themselves be competent witnesses to prove the payment or other discharge of the accounts, and there may be a doubt, whether any evidence could be given of their hand-writing. [Baker v. Blackburn, 5 Ala. Rep. 417.] But under no circumstances, could such evidence be proper, without showing the receipts were in existence, or signed at a time when the persons signing, had the authority from Bell to bind him. The circumstances of this case do not present the same question as was involved in Stark v. Keenan, 5 Ala. Rep. 590, as there, the writing proved was signed by an executor, who, by law, is invested with the power to bind his testator's estate, in the same manner as an individual may bind his own.

5. The question as to the slave which died pending the suit, is not important to be considered, for the reason that it does not appear to enter into the verdict. But if it was, we may remark, that there seems to be no good reason, why a recovery should be defeated, by an accident to property, over which the plaintiff had no control. Such was the conclusion of this Court in White v. Ross, 5 S. & P. 133, as well as of other Courts. See cases cited in Bettis v. Taylor, 8 Porter, 564.

6. In actions of detinue, which involve only the title to the slave at the time of suit brought, the writ is a sufficient demand. [Vaughan v. Wood, 5 Ala. Rep. 304.] If the defendant has any title, or right, by which he is authorized to retain the chattel sued for, it is matter of defence to the action.

For the error we have previously ascertained, the judgment is reversed and the cause remanded.