## ROSE vs. PEARSON.

### [ACTION FOR RECOVERY OF SLAVES.]

1. *Form of judgment.*—In detinue for slaves, (or in the analogous action prescribed by the Code, p. 552, ''for the recovery of chattels in specie,") the action having been commenced before the abolition of slavery, a judgment, on verdict, may be rendered for the plaintiff, for the slaves or their alternate value, notwithstanding the abolition of slavery before the trial. (BYRD, J., not concurriing.)

2. *Form of verdict; assessing separate value of property; judicial notice of abolition of slavery.*—In such action, the failure of the jury to assess the value of each of the slaves separately, if erroneous, is not an error of which the defendant can complain; since the abolition of slavery, of which the court will take judicial notice, has rendered it impossible for the defendant to make a voluntary delivery of the slaves, and impossible for the plaintiff to compel their delivery by any legal process.

3. *Form of judgment; error without injury.*—In an action for the recovery of slaves, brought by a mortgagee, judgment on verdict having been rendered for the plaintiff, since the abolition of slavery, for the slaves or their alternate value; an entry in the judgment, made at the instance of the plaintiff, to the effect that ''this judgment is to be discharged on the payment of" the balance due on the mortgage debt, as ascertained by the verdict of the jury, is, at most, error without injury.

APPEAL from the Circuit Court of Henry.
Tried before the Hon. HENRY D. CLAYTON.

THIS action was brought by Benjamin F. Pearson, against Columbus A. Rose, and was commenced on the 3d April, 1861. The complaint was in the form prescribed by the Code, (p. 552,) " for the recovery of chattels in specie," and contained but a single count;· by which the plaintiff claimed of the defendant twenty-four slaves, whose names were specified, " together with the value of the hire or use thereof during their detention, to-wit, from the 2d day of April, 1861." On the day the summons and complaint were issued, the plaintiff's agent made affidavit of ownership of the slaves; and gave bond, the condition of which was, " that if the said plaintiff is cast in said suit, he will pay the de-

fendant all such costs and damages as he may sustain by
the wrongful complaint;" and the clerk thereupon made an
endorsement on the summons, commanding the sheriff to
take the slaves into his possession, "unless the defendant
give bond, with good and sufficient sureties, as in detinue
cases, conditioned for the forthcoming of the property to
answer the lien created by a mortgage, executed by the
defendant to the plaintiff on the 8th day of December,
1858, to secure the. payment of two notes," (which were
particularly described, and the last of which only was said
to be unpaid,) "or, in default thereof, to pay such debt and
interest, with all costs." The record does not show when
the summons and complaint were executed. On the 18th ·
April, 1861, the defendant gave a replevy bond, the condi-
tion of which was, "that if the said C. A. Rose shall have
the property sued for forthcoming to answer the lien cre-
ated by a mortgage, executed by him to the plaintiff on the
8th December, 1858, to secure the payment of two notes,"
&c., (described as in the endorsement on the writ,) "or, in
default thereof, pay such debt and interest, with all costs."

At the October term, 1861, the defendant filed a plea of
*non detinet;* and at the October term, 1866, a trial was had
on issue joined on that plea. The verdict of the jury was
·in these words : "We, the jury, find the property sued for
to belong to the plaintiff, and assess the value at twenty
thousand dollars, and that the defendant owes the plaintiff
eight thousand one hundred and fifty-one 50-100 dollars,
balance due on note ;" and the court thereupon rendered a
judgment, which, after stating the appearance of the par-
ties, the verdict, &c., proceeded thus :—"It is therefore
considered by the court, that the plaintiff recover of the
defendant the said property sued for, to-wit," (specifying
the slaves by name,) "or the said sum of twenty thousand
dollars, their alternate value, together with the costs of
suit; for which let execution issue. And it is ordered, at
the instance of the plaintiff, that this judgment is to be
discharged on the payment of said sum of eight thousand
one hundred and fifty-one 50-100 dollars, the balance found
by the jury to be due on the note, with interest from this
date, together with all costs." The defendant afterwards

moved in arrest of judgment—"1st, because the jury did not assess the value of each slave separately; and, 2d, because the verdict does not support a judgment." The motion in arrest was overruled by the court.

There is no bill of exceptions in the record. The judgment of the court is assigned as error.

GEO. W. STONE, and ALPHEUS BAKER, for appellant.

JAS. L. PUGH, and F. M. WOOD, *contra*.

A. J. WALKER, C. J.—This is an action to recover personal property, in the form prescribed by the Code, and is analogous to the common-law action of detinue. The action was brought on the third day of April, 1861, and had for its object the recovery of slaves. It was tried, and judgment rendered, in October, 1866, after the slaves were emancipated, for the slaves or their value. A reversal is sought, upon the ground, that the court must judicially know that the slaves had ceased to be property before the judgment, and that the termination by legal authority, of property *pendente lite*, deprived the plaintiff of a right to the judgment he obtained.

That the death of slaves, pending an action of detinue for the recovery of them, does not affect the plaintiff's right to a judgment for the property or its alternate value, is *res adjudicata* in this State.—*White v. Ross*, 5 St. & P. 123; *Bettis v. Taylor*, 8 Porter, 564; *Bell v. Pharr*, 7 Ala. 807; *Johnson v. Marshall*, 34 Ala. 521. The weight of authority in other States is to the same effect.—*Carrel v. Early*, 4 Bibb, 276; *Caldwell v. Fenwick*, 2 Dana, 332; *Barsksdale v. Appleberry*, 22 Missouri, (2 Jones,) 389; *Haile v. Hill*, 13 Missouri, 612; *Austin v. Jones*, 1 Virginia R. (Gilmer,) 341; *Bethea v. McLennon*, 1 Iredell's Law, 523. These are all the decisions, bearing upon the question, which we have found.

In *Haile v. Hill*, (*supra*,) there is a *dictum*, the import of which can not be determined with certainty on account of the imperfect report of the case, but which *seems* to assert that, in case of death pending the suit, there can be no recovery of the alternate value. If such be the assertion

of the court, the weight of it as an authority is destroyed by the later and better considered decision by the same court in *Barksdale v. Appleberry, supra*. In the Virginia case of *Austin v. Jones*, three judges' delivered opinions. Coalter, J., one of them, held that no judgment for the alternate value could be given; Brooke, J., in an able argument, held the contrary; while the third judge (Roane) contributed to support the opinion of Judge Brooke, but placed his decision upon a point of pleading, declining to commit himself on the point debated by the other two judges. In the case cited from Iredell's Reports, Judge Gaston insisted, (the point not arising, and being examined only at the request of the attorneys,) that the death of the slave precluded a recovery of the value. In his decision, Judge Gaston assails an older North Carolina decision, which stood opposed to his argument. This older decision (*Skipper v. Hargrave*, Martin's R. 74) is referred to by this court as an authority sustaining its conclusion in *White v. Ross, supra*. We have not had access to it.

By reference to the opinions of Judge Coalter of Virginia, and Judge Gaston of North Carolina, it will be found that they proceed upon the postulate, that the alternative value is to be ascertained as of the time of the trial; and thence it is argued, that, as the property was of no value at that time, nothing could be recovered. We are forbidden, in this State, to reason from the same postulate; for, here, the rule is the reverse, and the jury are permitted to fix any time between the demand and the trial for ascertaining the value.—*Johnson v. Marshall*, 34 Ala. 521.

Our old decision in *White v. Ross*, made in 1833, has never been questioned in this State, but has at least been indirectly sanctioned in later cases. It is consistent with our decisions, as to the latitude allowed to the jury in the selection of the time for the ascertainment of the value, and has, therefore, a strong claim to our respect as an authority. Beyond this, however, it is sustained · by reason and justice. When an owner's property has been converted, there immediately springs up in his favor a right to have its value; and that right may be enforced in an action of trover, without the peril of defeat by the death or destruc-

Rose v. Pearson.

tion of the property. If, in detinue, a recovery of the property or its alternate value is prevented by its death or destruction, it is obvious that that form of action is inadequate to redress the wrong, or enforce the right in its full extent. The plaintiff must yield his desire to obtain the specific property, or he must incur the peril of losing it in the possession of a *tort-feasor*. The policy of this court has been so to shape its adjudications in reference to the action of detinue as to encourage the delivery of property wrongfully withheld. This policy, which seems to us to be wise, would not be consulted, by placing the subject of litigation at the hazard of the owner, and relieving the wrongdoer from responsibility. Indeed, the contrary policy, when the property is of a perishable nature, would enable the defendant, by retaining possession, and prolonging the litigation, to defeat the plaintiff's right to enjoy his property.

We attach little importance to the argument drawn from the supposed absurdity of rendering a judgment for property which has ceased to exist. The judgment is not for the property, but for it or its alternate value. The alternative is provided for the case where the property is not attainable. If the defendant here had sold the property in the fall of 1861, for its full value, and received payment for it, it would be so shocking to justice, for him to be relieved from the payment of the alternate value by the subsequent death of the slaves, that the proposition would not be asserted; and yet the judgment, in that case, would be for that which had ceased to exist, or its alternate value. The plaintiff has been deprived of the possession of his property. Had he obtained possession, he might have sold it, and realized its full value. If we could look at the fact indicated by the record and commented upon by the counsel, that the plaintiff sought to recover the property as mortgagee, we would perceive very clearly, that the plaintiff could have sold the property and discharged the debt, if there had not been a wrongful detention from him. It is unjust and unconscientious, under such circumstances, that the loss, if it had resulted from death, should fall upon the plaintiff.

The case in hand is one where the property has not been destroyed by death, but the quality of property has been taken away by law. There is a destruction of property, in both cases, by *vis major*. An intervening occurrence, beyond the defendant's personal control, has alike in both cases disabled him to relieve himself by a delivery. The principle is not changed by the variation in the instrumentality of destruction. The plaintiff, in either case, has a right to the alternative value.

We have argued the question upon the supposition, that the defendant retaining the property is in the wrong. We do not mean moral wrong, for a party may fail in the defense of an action, who supposes himself to have a valid title. But the question which we have considered can not arise, except when the verdict is against the defendant, and there is thereby an ascertainment that he was legally in the wrong in the retention of the property which is the subject of litigation. It is, therefore, a legitimate assumption in the argument of the question, that the defendant is a wrongdoer, and a legitimate conclusion, that he, wrongfully keeping and converting another's property, does it at his peril.

The case of *Cole v. Conolly*, 16 Ala. 271, is so manifestly distinguishable from this, as to require but little remark. In that case, the property was in the legal custody of an officer, and was taken away from him by a judicial proceeding, which was held valid and binding upon the adverse party. It distinguishes between a cessation of plaintiff's title resulting from death or destruction, and such a cessation resulting from a change of title as between different citizens.

2. The verdict failed to ascertain the separate value of the several slaves. The reason of the requirement of the assessment of the values separately is to fix the amount necessary to pay the value of any of the several articles of property in discharge of the judgment *pro tanto.*—*Miller v. Jones*, 29 Ala. 174; *Haynes v. Crutchfield*, 7 Ala. 189; *Bell v. Pharr*, *ib.* 807; *Cummings v. Tindall*, 4 St. & P. 357. We judicially know that the slaves were free before the trial. The plaintiff could not compel the delivery of them by any process, and the defendant could not voluntarily deliver

them in discharge of the judgment, or any part of it. A separate valuation of each negro would, therefore, have been a mere supererogation; and it is clear beyond doubt that no prejudice has resulted from the omission. There can, therefore, be no reversal on that ground.

3. The insertion in the minutes, by the plaintiff's consent, that the judgment might be discharged by the payment of the smaller sum, being the amount of the mortgage debt, could not injure the defendant, and is no reason for complaint on error.

The judgment is affirmed.

BYRD, J., not concurring.