# Jones *v.* Anderson.

*Statutory Detinue for Oxen, Log-Cart and Fixtures.*

1. *What title will support action.*—An equitable title will not support an action of detinue, or the corresponding statutory action for the recovery of chattels *in specie;* but a prior rightful possession will support the action, against any one who does not show a better outstanding title with which he connects himself.

2. *Sale and delivery of personal property; retention of lien by vendor.* On a sale and delivery of a wagon, team of oxen and fixtures, in consideration of a certain quantity of timber of specified size and quality, a stipulation that the seller "reserves and holds a lien on the said property, until the said pieces of timber are delivered," is not a reservation of the legal title, but only creates an equitable mortgage.

3. *Retaking possession by seller; rescission or modification of contract.* The wagon and oxen having been delivered to the purchaser under such contract, the seller would have no right to retake them, unless there was

| 76 | 427 |
| 95 | 441 |
| 76 | 427 |
| 96 | 408 |
| 76 | 427 |
| 100 | 346 |
| 76 | 427 |
| 104 | 417 |
| 76 | 427 |
| 113 | 525 |
| 76 | 427 |
| s82 | 302 |
| 120 | 571 |

a rescission of the contract, or such modification thereof as would convert his reserved lien into a legal mortgage, or otherwise vest in him a legal title; and if there were two joint purchasers, one of them would have no right, without the assent and concurrence of the other, to make such rescission or modification, or to surrender the possession.

4. *Fraud by purchaser, on sale of personal property; burden of proof.* There are circumstances of fraud and false representation or concealment, sometimes entering into contracts of purchase on credit, which arm the seller with the right, if seasonably expressed, of renouncing the contract, and recovering the property thus fraudulently obtained from him; but fraud is defensive matter, the *onus* of which rests on him who asserts it.

5. *Parol evidence explanatory of terms used in writing.*—Parol evidence is admissible to explain the meaning, among men engaged in the timber business, of the words "*hewn timber, to average one hundred and twenty feet, and to class B No. 1 good,*" as used in a written contract, and to show that the terms are applied only to square timber, and do not include timber hewn octagonally for use as spars.

6. *Assessing value of separate articles sued for.*—In a statutory action for a team of oxen, a log-cart, and fixtures (Code, § 2944), judgment on verdict being rendered for the plaintiff, the separate value of the several articles sued for should be ascertained and specified.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by David J. Anderson, against George M. Jones and A. A. Autrey, to recover four yokes of oxen, particularly described, a log-cart, with chains and fixtures; and was commenced on the 2d March, 1882. The defendants pleaded *non detinet*, and the cause was tried on issue joined on that plea. On the trial, as appears from the bill of exceptions, the plaintiff read in evidence, after proving its execution, a written contract entered into between himself and said defendants, dated November 4th, 1881, and signed by defendants only, in these words: "Know all men by these presents, that we, A. A. Autrey and Geo. M. Jones, have this day, for and in consideration of one log-cart, and four yokes of oxen, together with one log-chain, three pull-chains, four yokes and bows, and one cart-roller and fixtures belonging to the same, the receipt whereof is hereby acknowledged, bargained, sold and conveyed to D. J. Anderson twenty-five pieces hewn timber, to average one hundred and twenty feet, and class B No. 1 good, now lying near Brooklyn, Alabama; to be delivered in the month of Battle Creek as soon as possible, to be pointed out to the said D. J. Anderson, and branded with his private mark, and to be inspected by B. L. Anderson on arrival at Ferry Pass, Florida." The contract then provided for an increase or abatement of one-half cent per foot for each five feet average above or below 120 feet, as ascertained on inspection, and continued thus: "It is further agreed and understood, that the said Anderson reserves and holds a lien on the above-named oxen, log-cart, log-chain, &c , until the said twenty-five pieces of hewn timber are hauled

[Jones v. Anderson.]

to the mouth of Battle Creek and inspected at Ferry Pass, and settlement made according to specifications as agreed above; and further, should the said Autrey and Jones fail or refuse to haul the above-named timber promptly, within a reasonable time, the said D. J. Anderson shall have the right to haul, or have the said timber hauled, at the expense of said Autrey and Jones; and further, that the above-named lien shall cease on delivery of above-named timber at the mouth of Battle Creek as above agreed." The oxen, wagon and fixtures, mentioned in this contract, which are the articles here sued for, were delivered by plaintiff, under this contract, to said Jones and Autrey. Afterwards, about January 20th, 1882, plaintiff went to Brooklyn, and finding that Jones and Autrey had only ten pieces of timber there, he demanded the return of the articles which he had sold, and took them without objection on the part of Autrey, who said that he had sold out his interest to Jones. Jones was absent at this time, but returned in a few days; and he then went to plaintiff, and demanded the oxen and cart, saying that he wanted them to haul the timber; and on plaintiff's failure to deliver them up, or to surrender the contract, he took possession of the oxen, cart and fixtures. Hence this suit.

Of the ten pieces of timber which the defendants had at Brooklyn, and which they claimed were ready for delivery under the contract, seven were "square timber, and three were octagonal, or spar timber;" and plaintiff offered evidence "to show that, while 'hewn timber,' in general parlance, applied to both square and octagonal timber, in timber parlance, and among timber men, it meant only 'square timber;' that square timber only was classified, and that the terms used in the written contract applied only to square timber." Several witnesses testified, in varying phraseology, to this effect; and exceptions were duly reserved by the defendants to the admission of the evidence, in each instance. The bill of exceptions further states, "There was evidence tending to show fraud," and purports to set out "substantially all the evidence."

The defendants requested several charges, which were in writing, and of which the following were refused: (4.) "Fraud is never presumed in law to exist, and the party seeking to set aside an instrument for fraud, or to derive benefit from the actions of others, on the ground that their actions are fraudulent, the burden of proving the fraud is upon him; in other words, if the plaintiff asserts that a fraud has been perpetrated upon him, the burden of proving the fraud is on him, and the jury are not authorized to presume that fraud exists." (6.) "The plaintiff can not maintain this action of detinue, unless, at the time of suit brought, he had the entire legal title to the property sued for; and unless the plaintiff has reasonably satisfied

the jury, from the evidence, that he had the entire legal title to the property at the time of suit brought, their verdict should be for the defendants." (8.) "Although the jury may believe, from the evidence, that the plaintiff had a lien on the property sued for, and had possession thereof just before this suit, this is not enough to authorize him to recover in this suit; that, before he is entitled to recover, he must, at least, not only have possession of the property sued for, but also the right of possession, accompanied by a lien for money advanced, or for the price of the property; and unless the jury are so reasonably satisfied, from the evidence, then they should find for the defendants." The court refused each of these charges, and the defendants excepted to their refusal.

The verdict of the jury was in these words: "We, the jury, find for the plaintiff, and assess the value of the team at $400, and the use of the team at $80;" and the court thereupon rendered judgment, "that the plaintiff have and recover of the defendants the specific property sued for," specifying the articles, "or its alternate value, to-wit, $400, and the further sum of $80, the value of the hire or use of the same, in accordance with the finding of the jury aforesaid."

The several rulings of the court on the evidence, the refusal of the several charges asked, and the verdict and judgment, are now assigned as error.

GAMBLE & RICHARDSON, and STALLWORTH & BURNETT, for appellants.—(1.) Parol evidence was not admissible to change the terms of the written contract, or its legal effect.—1 Brick. Digest, 860–62, §§ 806, 820, 827; also, p. 865, §§ 869–71. (2.) The fourth charge asked ought to have been given. *Shackelford v. P. & M. Bank*, 22 Ala. 238; *Pickett v. Pipkin*, 64 Ala. 520. (3.) To maintain detinue, or the corresponding statutory action, the plaintiff must have the entire legal title, or the immediate right of possession.—*Parsons v. Boyd*, 20 Ala. 112; *Reese v. Harris*, 27 Ala. 301; *Bell v. Hogan*, 1 Stew. 536; *Price v. Tally*, 18 Ala. 21. (4.) The value of the several chattels sued for should have been assessed separately. Code, § 2944; *Smith v. Wiggins*, 3 Stew. 221; *Bell v. Pharr*, 7 Ala 807; *Rowan v. Hutchinson*, 27 Ala. 328; *Rose v. Pearson*, 41 Ala. 692; *Miller v. Jones*, 29 Ala. 186; *Rambo v. Wyatt*, 32 Ala. 363; *Haynes v. Crutchfield*, 7 Ala. 189; *Jones v. Pullen*, 66 Ala. 309.

STONE, C. J.—The present suit is a statutory action for the recovery of chattels in specie; different from the common-law action of detinue, only, in the super-addition of certain statutory provisions and powers. Anderson sold to Jones and

Autrey, and delivered to them, a log-cart with fixtures, and a team of oxen. The executory consideration of the purchase was twenty-five pieces of hewn timber, to class "*B No. 1, good*," to average 120 feet, and to be delivered within a reasonable time at a designated place. The contract was evidenced by written agreement, signed by Jones and Autrey, and contains a clause that Anderson " reserves and holds a lien on the [property sold] until the said twenty-five pieces of hewn timber are hauled," &c.

If there be nothing else in the transaction, it is manifest this language does not secure a legal title to Anderson, nor does it amount to a *legal* mortgage of the property, as security for the purchase-money. Of itself, it secured to Anderson no right to take possession of the property. It confers a lien, or equitable mortgage, enforceable alone in equity.—*Donald v. Hewitt*, 33 Ala. 534; *Jackson v. Rutherford*, 73 Ala. 155. An equitable title will not maintain detinue.—*Collier v. Faulk*, 69 Ala. 58; *Mayer v. Taylor*, *Ib*. 403; *Wilkinson v. Ketler*, *Ib*. 435; *Rees v. Coats*, 65 Ala. 256.

After the plaintiff, Anderson, claimed that Jones and Autrey had broken their contract, he demanded of Autrey, in the absence of Jones, that they should comply with their contract by delivering the timber, or that the cart, fixtures and team should be delivered to him. Autrey replied, that he did not have the possession of them; that he had sold out his interest in the contract to Jones; but that, so far as he was concerned, Anderson might take them. He thereupon did take possession of them, and carried them off. The property being afterwards found in the possession of Jones, Anderson instituted this suit, and claims that the possession he had previously obtained with assent of Autrey gave him such rightful possession as will maintain this action. A prior, rightful possession of personal property, violated and broken up, will maintain detinue, against all comers, except a better owner.—*Shomo v. Caldwell*, 21 Ala. 448; *Miller v. Jones*, 26 Ala. 247; *Reese v. Harris*, 27 Ala. 301. Had Anderson such rightful possession?

We have shown above that the written contract conferred no legal title on Anderson. It gave him, not any right to seize the property, but only a right to subject it in equity to the payment of his demand. To confer on him a right to take possession of the property, assuming that the contract of sale was binding, required either a rescission, or such modification of its terms as to convert it into a legal mortgage, instead of an equitable. Neither the contract, nor anything else in this record, shows that Jones and Autrey purchased as partners, if that would make any difference. They purchased jointly, and became equal owners. Autrey had no authority to rescind the

[Jones v. Anderson.]

contract, nor to modify its terms, without the concurrence of Jones; and it results that the legal title to the property remains out of Anderson, so far as the question we have been considering is concerned.

Charge numbered 6 ought to have been given, as the evidence appears in the record. Charge numbered 8 would be correct, if one expression had been omitted. It is certainly true that, before plaintiff is entitled to recover, he must have a right of possession of the property sued for. Showing that, however, he need not go farther, and prove a prior possession and a lien. These additional rights would certainly not impair his right to recover, but he could make out his case without them. The case of *Bryan v. Smith*, 22 Ala. 534, is not opposed to these views. Prior possession is good against any one, who can not show a better outstanding legal title, with which he connects himself.—*Miller v. Jones, supra.*

There was, probably, another phase of this case raised in the court below. We infer from the record, that a dispute was raised, whether or not Jones and Autrey had the twenty-five pieces of hewn timber they promised to deliver, in payment of the chattels purchased. By the written contract, they sold and conveyed to Anderson "twenty-five pieces hewn timber, to average one hundred and twenty feet, and class 'B 1, good,' now lying near Brooklyn, Ala.," &c. The meaning of this language is, that they then had and owned the hewn timber they bound themselves to deliver. The testimony on this question was not very harmonious. We suppose the question of fraud was sought to be raised on this controverted question of fact. If they then had the hewn timber, they were in much better condition to comply with their contract, than if they had it not. There are circumstances of fraud and false representation or concealment,, sometimes entering into contracts of purchase on credit, which arm the seller with the right, if seasonably expressed, of renouncing the contract, and recovering the property thus fraudulently obtained from him. 2 Brick. Dig. 14, §§ 10, 20; *Loeb v. Flash*, 65 Ala. 526. But fraud is defensive matter, the *onus* of which rests on him who asserts it. It would seem charge No. 4 should have been given.

In admitting proof of the meaning of certain phrases found in the written contract in this case, the Circuit Court did not err.—*Smith v. Aiken*, 75 Ala. 209.

The verdict and judgment in this case should have ascertained the separate value of the articles sued for.—*Haynes v. Crutchfield*, 7 Ala. 189; *Miller v. Jones*, 29 Ala. 174; *Rambo v. Wyatt*, 32 Ala. 363; *Rose v. Pearson*, 41 Ala. 687.

Reversed and remanded.