## KENAN *vs.* HOLLOWAY.

1. A voluntary payment of money by one person for the use of another, without a previous request, will not support a subsequent promise to refund, unless the payment is beneficial to the promissor.

2. The satisfaction of a judgment by a third person, if sanctioned and adopted by the defendant, will ordinarily support a promise to refund. In such case, the fact of ratification warrants the implication of a previous request.

3. An acknowledgment by K. to a stranger, that she owes H., for money which he had voluntarily paid for her, without a previous request, and that she is in honor bound to reimburse him, and intends to do so, is not a promise to H. to refund him the money so paid.

4. A promise, made under such circumstances as show an ignorance, on the part of the promissor, that the demand, promised to be paid, creates no legal liability, is without consideration and void.

5. If a party offers in evidence an *entire* record, a part of which is legal, and a part illegal testimony, the court *commits no error* in excluding the whole.

6. Where the *mere tendency* of a charge is to mislead the jury, the party, to be prejudiced by it, should ask additional and explanatory instructions; but where its *necessary effect* is to produce that result, the charge is fatally erroneous.

Error to the Circuit Court of Wilcox. Tried before the Hon. Nathan Cook.

This was an action of assumpsit, by the defendant against the plaintiff in error, for money lent and advanced. The following facts appear from a bill of exceptions found in the record. One Seawell obtained a judgment in the County Court of Mobile, against the defendant and Thomas Kenan, as executrix and executor of Michael Kenan, deceased: an execution issued on this judgment, and was levied, and bond was taken for the delivery of the property from the executrix and executor, which was forfeited, and thereupon an execution issued against them and their securities, which on the 7th of March 1842, came to the hands of the plaintiff as sheriff of Dallas county, and was by him satisfied by a payment to the plaintiff therein, on the 28th April 1842. The plaintiff proved by one Philpot, that in a conversation with him, the defendant stated, that she had promised the plaintiff to have the money to satisfy the execution at Cahawba, on the first day of the Spring court, and would have had it there at the time, had she not been advised by an attorney in Mobile, where she went to raise the money, that she could be relieved from the judgment: that on her arrival at Cahawba, on the first day of court, she learned, that the plaintiff had advanced the money out of his own funds: that he should not lose it, having paid it innocently: that she was in honor bound to reimburse him, and intended doing so, though she regretted, that he did not await her return from Mobile, before he paid it. The same witness stated, that in another conversation with her, she said, in reference to a sale of her plantation in Dallas, to one Wilson, that if Wilson bought it, he must satisfy the plaintiff's claim for the money advanced by him on the execution, as she owed it. The defendant offered in evidence the transcript of a bill filed by her and Thomas Kenan,

against Seawell, on the 30th April 1842, to restrain and perpetually enjoin the collection of said judgment, with the proceedings, and final decree thereon in accordance with its prayer. To the introduction of this transcript, the plaintiff objected, and the court excluded it from the jury. Various charges were asked by the defendant and refused, and others were given by the court, but the following charge is the only one necessary to be stated: The court charged the jury, that although the plaintiff may have paid the money on the execution voluntarily, and without any previous request from the defendant, yet if they believed, from the evidence, that the defendant, after the payment of the money, assented to the payment so made, and in consideration thereof, promised the plaintiff to refund it to him, that the defendant would be bound by that promise, and the plaintiff would be entitled to recover.

To the ruling of the court and to the several charges given and to the refusal to charge as requested, the defendant excepted, and now assigns them as error:

BOLING & SAFFOLD, for plaintiff in error:

1. There was no *new consideration.* So far as the proof shows Holloway paid the debt *voluntarily.* Mrs. Kenan would not have been liable had she given her note for the debt. Hester v. Weston, 6 Ala. Rep. 416; Ten Eych, et al. v. Vanderpool, 8 J. R. 120; Rhan v. Hughes, 7 Term Rep. 350, Note; Brown v. Adams, 1 Stew. Rep. 51; Click v. McAfee, 7 Porter, 62.

2. The promise must have been *beneficial* to her to bind her. Brown v. Barnes, 6 Ala. Rep. 694; Nelson v. Boynton, 3 Metc. 396. In the latter case, an attachment was dismissed on promise of a third party to pay the money. The third party was not held liable because the promise was not *beneficial to defendant.*

3. Mrs. Kenan's acowledgment that she was bound, if made under a mistake of the law, does not create an obligation on her, if the law itself would not impose one. Warder and others v. Tuck, 7 Mass. Rep. 449; Freeman and others v. Boyington, 7 Mass. Rep. 483.

4. The record from the chancery court should have been received. It was proper evidence. It was good to show a

want of consideration—also, to show that no detriment could have resulted to Holloway, had he failed to pay over the money, or had he failed to make it. McCall v. McRea, 10 Ala. Rep. 313. It could have been introduced to show the fact of suit and *perpetual injunction.* 4 Phil. Ev. by C. & H. 815, Note, 567; ib. 817, note, 270, 583, p. 333. The record is good evidence to show that she was *actually damaged* by his paying the money at the time he did, *voluntarily,* and *without* any *request.* Moreover, the reason is given by her for wishing to pay Holloway; not on the ground that she was benefitted, but because he was the *innocent party,* and ought not to lose it. The *supposed cases* of the counsel for defendant in error, of benfit to her, cannot answer here, as that she was *relieved* by his paying the money from giving an injunction bond, &c. She got into worse hands by becoming liable to Holloway.

5. Mrs. Kenan has been damaged by the charge of the court *presupposing,* that there was a promise. There was nothing to found the *charge upon.* It necessarily had a bad effect upon the jury, for the court to throw out any such intimation to the jury. The whole testimony is set out, and no promise is shown whatever: It is not shown that she ever saw Holloway, or said one word to him about the case; the court therefore erred in making this charge.

6. It distinctly appears, from the only testimony in the case, viz, Philpot's testimony, that Mrs. Kenan never did promise Holloway, to pay him; and what she said to Philpot, was after she had obtained the injunction.

LAPSLEY & HUNTER, for defendant:

1. As to the matter of consideration. To support an express subsequent promise if there is a benefit to the promissor, no express previous request is necessary. The doctrine of a past or executed consideration never applies, except where there is no benefit to the promissor. Story on Contracts, p. 94–95 and 96, §§ 147, 148 and 149: See especially, § 147 and 149. This is the language : " and, generally, where a party derives a benefit from the consideration, a request will be inferred," and note 4 to this sentence, where many authorities are cited. See also, 4 Am. Jurist, 2, for Mr. Metcalf's article. But the case of Rountree v. Holloway, 13 Ala. Rep., is directly in point.

But it is contended that there was *no debt* due at the time Holloway paid the money. The answer to this is: it is wholly immaterial as between Holloway and Kenan, whether there was a debt as between Kenan and Seawell—there was a judgment in full force, and an execution out against her, and Holloway's relieving her from the pressure of such judgment and execution, was a sufficient consideration, even if it had been proved by competent evidence, beyond all question, that no debt was due, as between Kenan and Seawell. See as to consideration, Story on Contracts, 73, § 115. But this qustion *is not raised upon the record. There was no evidence showing, or tending to show, that there was no debt due, and no charge asked or refused on that question.* This concludes the matter without any question. It is certain that the decree rendered three years after, when Holloway was no longer a party, was not evidence for that or any other purpose. Holloway had ceased to be a party before that decree was rendered. As to this record, it will be observed, that the *whole* record was offered and rejected—it contains the decree perpetually enjoining the judgment, *which was rendered after Holloway had been dismissed as a party.* This decree was clearly not evidence against Holloway, and for that reason the whole was properly rejected. The court was not bound to distinguish for the party offering, the good from the bad. Hrabowski v. Herbert, Daniel & Co. 4 Ala. 265.

2. As to the charge asked about reviving a consideration, where it was *suspended* by statute, &c., that charge was clearly abstract. It will be found on examining the authorities, that it is under the head of *statute of limitations.* There was no evidence of any old right of action which had been lost by delay, but the evidence was of an *entirely new, original cause* of action just then *arising.* This charge if given, could only have misled the jury, by putting before them a legal truism, wholly inapplicable to the facts of this case.

COLLIER, C. J.—It is well settled that money paid by one person for the use of another does not necessarily impose a liability upon the latter; for one man cannot of his own will pay another man's debt without his consent, and thereby convert himself into a creditor. Durnford v. Messiter, 5 Maule &

8

S. Rep. 445; Weakley v. Brahan & Atwood, 2 Stew. Rep. 500. In such case then, the payment does not create a consideration from which the law will imply a promise to repay, but to entitle the party to recover, there must be a previous request, not only alleged, but actually proved. Kaye v. Dutton, 7 Mann. & Grang. Rep. 807; Victors v. Davis, 12 Mees. & Welsb. Rep. 758. Where, however, the consideration is beneficial to the party sought to be charged, and is actually adopted or taken advantage of by him, the person executing the consideration becomes the agent of the promissor, by the adoption of his act by the latter. *Omnis ratihabitio retrohabitur et mandato equiparatur.* Story on Con. (2d edit.) § 473, and citations in Note 2; Rountree v. Holloway, 13 Ala. Rep. 357.

It is said to be of the essence of every consideration, that it should create some benefit to the party promising, or some trouble, prejudice or inconvenience to the party to whom the promise is made. Story on Con. (2d edit.) § 431, *et seq.* But an executed consideration which was not induced by a previous request of the promissor, if not beneficial to him, will not sustain the promise upon the ground that it was an injury to the promissee. Am. Jur. Oct. 1839, p. 2.

A moral obligation it is is said, is not a sufficient legal consideration to support either an express or implied promise, for the law cannot undertake to enforce every promise which a man of honor and integrity would feel himself bound to perform. In Smith v. Ware, 13 Johns. Rep. 259, a deed of land described it as "supposed to contain ninety-three acres," but upon admeasurement, it was ascertained to contain much less, and the vendor promised to return a proportional part of the price : *Held*, that as the terms of the contract indicated a willingness by both parties to take the risk of any mistake in quantity, the promise was a mere *nudum pactum.* So in Mills v. Wyman, 3 Pick. Rep. 207, it was held, that the general rule, that a moral obligation is a sufficient consideration for an express promise, is to be limited in its application to cases, where a good or valuable consideration once existed. Accordingly, where a son, who was of full age, had ceased to be a member of his father's family, was suddenly taken sick among strangers, and, being poor and distressed, was reliev-

ed by the plaintiff, to whom the father afterwards wrote, and promised to pay the expenses incurred, it was decided, that such a promise would not sustain an action. It was admitted by the court, that some of the authorities lay down the rule in general terms, that a moral obligation is sufficient to support an express promise; but it was said, that an examination of the cases shows, "that the universality of the rule cannot be supported, and that there must be some pre-existing obligation, which has become inoperative by positive law, to form a basis for an effective promise: *Further*, " a deliberate promise in writing, made freely and without any mistake—one which may lead the party, to whom it is made, into contracts and expenses, cannot be broken without a violation of moral duty. But if there was nothing paid or promised for it, the law, perhaps wisely, leaves the execution of it to the conscience of him who makes it. It is only when the party, making the promise, gains something, or he, to whom it is made, loses something, that the law gives the promise validity." See Story on Con. (2d edit.) § 465, and citations in note 3; Am. Jur., July 1839, p. 276; 2 Greenl. on Ev. § 107, and note, 2, *et. seq.*

*Prima facie*, (it may be conceded,) the payment of the execution, to the plaintiff therein, was beneficial to the defendant, if the forthcoming bond imposed a personal liability upon her; but whether such was the effect of the bond, is a question, which the view we take of this case makes it unnecessary to decide. See Betts adm'r v. Taylor, 8 Port. Rep. 564. Upon the assumption that the payment was a benefit to the defendant, it would furnish a sufficient consideration for an express promise by her to reimburse the plaintiff. If, however, the judgment on which the original execution issued, could not be enforced, and has been perpetually enjoined, she could not have been benefitted by its payment. The payment did not create a moral obligation upon her to reimburse, and a promise to do so would be a mere *nudum pactum.* If the plaintiff satisfied the execution *gratuitously*, we have seen that the defendant would not become his debtor, and even an express promise subsequently made, would not make her so, unless she derived a benefit from the payment. A discharge from liability to satisfy a judgment, under ordinary circum-

stances, if sanctioned and adopted by the defendant, would sustain a promise, as we have already seen. The fact of ratification would warrant the implication of a previous request.

The facts deposed to by the witness, Philpot, we incline to think, do not establish an express promise. Giving to the language of the witness the most liberal construction of which it is susceptible, and it merely shows that the defendant was unwilling that the plaintiff should be a sufferer by the payment of the execution. She doubtless was under the impression, that he supposed, from the intention she had avowed previous to her departure for Mobile, that she proposed to obtain the money there, and satisfy the execution on the first day of the court, to which it was returnable, and that in paying it previous to that time, he really intended to confer a favor on her. While she regretted that he had made the advance for her, because she had changed her purpose in Mobile, and while there obtained an injunction, which she was advised would be perpetuated, under a sense of gratitude for an act of intended kindness, she declared to the witness, that the plaintiff should be reimbursed, and that she desired to sell property to obtain the money. The conversations with the witness do not appear to have been communicated to the plaintiff, and if they were, it is wholly immaterial, for we have seen they could not inure as a promise to the plaintiff, but were nothing more than a declaration of her intention, made to the witness alone. The plaintiff cannot avail himself of them as an admission by the defendant, because they related to a consideration, if indeed it be one, that was *executed* and *passed*, and consequently could not have influenced him in what he did. 2 Starkie Ev. 31, 1st Am. edit. Conceding that the declaration, that *she owed* the defendant, could be construed into an acknowledgment of indebtedness, yet it does not constitute a direct promise; and if it did, it is said to be well settled that a promise under such circumstances as show an ignorance that the party was legally discharged, is without consideration and void. Warder, et al. v. Tucker, 7 Mass. Rep. 449; Freeman v. Boynton, Id. 483; Kennon v. McRea, 7 Port. Rep. 175.

If a subsequent promise was made to pay the plaintiff, it then might have been material to show that there was no consideration to support it; as, that the judgment was enjoined

previous to such promise, and that the injunction was subsequently perpetuated, so that the defendant derived no benefit from the payment. In this point of view, it was important to adduce the record of the chancery suit and decree at Mobile. Now, although that suit may have been dismissed as to the plaintiff, previous to the rendition of the decree, yet the record was admissible to show the time when the injunction was obtained, and to identify the judgment at law ; and the decree was proper evidence to show that that judgment was enjoined and could not have been enforced against the defendant. In such case the record and decree are competent evidence of the facts we have stated. 1 Starkie Ev. 187, *et seq.* 1st Am. edit. Id. 286. But the record was not admissible for all purposes, especially as to the facts alleged in the bill. The defendant then should have avowed the facts, proposed to be proved by the record, and not having done so, the court was not bound to discriminate between the parts, which were admissible and incompetent, but might reject it *in toto.*

The legal questions naturally suggested by the evidence, are whether the defendant promised to repay the plaintiff, and if she made such a promise, was it founded on a sufficient consideration. But neither the prayers for instructions, nor the charges given, appear to have considered whether the conversations between Philpot and the defendant constituted a promise. The charges refer it to the jury to determine, whether there was a promise, and maintain its validity, if there was one. Placing as we must do, the chancery record entirely out of view, and perhaps, it should be inferred that the defendant was benefitted by the satisfaction of the execution ; if so, we have seen there would be a sufficient *executed consideration* to support an express promise. But however this may be, we think it perfectly clear that the jury were misled by the last charge, and, under the impression that the conversation between the witness and defendant proved a promise, they found for the plaintiff. Their verdict could not have been rested upon any other hypothesis. The court should have instructed the jury as to the effect of the evidence, instead of giving them a charge in such general terms, as would most probably induce them to find for the plaintiff, in the absence of evidence. If *the tendency* merely of the charge had been to mislead, the defendant

should have asked additional and explanatory instructions; but where it *will necessarily* mislead, and actually does, it is a fatal error. In the present case, an ordinary jury would certainly have supposed, that the evidence of a promise was sufficient, if they credited the witness, and the result shows that such must have been the influence, under which the verdict was found.

For the prejudicial effect of the last charge, the judgment is reversed, and the cause remanded.