## THE DENVER TRAMWAY COMPANY v. LASSASSO.

1. PRACTICE IN CIVIL ACTIONS—INSTRUCTIONS.

A mere omission properly to charge upon some point is not reversible error, unless the party complaining of such omission called the attention of the trial court to the error in apt time and manner.

2. SAME.

If there is a mere tendency in the charge to mislead the jury, a party, to avail himself of the defect, must ask additional explanatory instructions; but where it necessarily and actually misleads, it is fatal error.

3. SAME.

Where, in an action for damages based upon defendant's negligence, the evidence tended to support the defense that plaintiff was guilty of contributory negligence, an instruction to the effect that the important question submitted for determination is, "Was the defendant guilty of negligence?" is misleading and constitutes reversible error.

*Appeal from the District Court of Arapahoe County.*

Mr. JAMES H. BROWN, Mr. MILTON SMITH and Mr. A. M. STEVENSON, for appellant.

Messrs. CAYPLESS & BROWN, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

This action was instituted by the appellee, as plaintiff below, against the defendant company, who is the appellant here, to recover damages for personal injuries alleged to have been sustained by him, and for damages to his horse and wagon, through the negligence of the defendant company.

The defendant company was operating its street car system in the city of Denver, and while plaintiff was on one of the public thoroughfares of the city, upon which was defendant's street car line, the injuries were received. There are three separate causes of action set up in the complaint arising out

of the same act of negligence,—for injuries to plaintiff, for injuries to the horse, and for injuries to the wagon.

The defendant by its answer denies all of the allegations of the complaint, and sets up to each cause of action the plea of contributory negligence by the plaintiff. There is no replication to this affirmative defense. Upon the issues thus presented, the action was tried to the court and a jury and resulted in a verdict in favor of the plaintiff, upon which judgment was thereafter rendered upon the overruling of the defendant's motion for a new trial.

From this judgment the defendant appeals to this court, and assigns numerous errors. Much of the argument has been directed to matters which the defective record in this case does not present. Had proper objections at the appropriate time been interposed, or exceptions duly taken and preserved to such objections as were properly made, and error assigned by the appellant to the rulings of the court thereon, this judgment might be reversed upon several grounds. The two errors assigned,—misdirection of the court and the insufficiency of the evidence,—are the only ones necessary to consider.

Plaintiff's injuries were received as the result of a collision of his wagon with a street railway car in one of the public streets of Denver. The only evidence in his behalf as to the collision was his own testimony. As nearly as practicable, we give it in narrative form in his own words:

I had been going north on my way to the Jesuit College, driving a gentle horse with which for some time I had been familiar. I stopped, still facing north, in front of the store of Mr. Jacobs, and sat in my wagon talking to him, the wagon being about fifteen feet from, and parallel with, the car track. In the wagon with me were my two boys,—one six, the other nine,—and an old man. At this point the car track is straight, and the view from where the wagon was standing is not obstructed. While sitting there in the wagon I saw a car approaching on a straight track, moving at the usual rate of speed, and on a down grade. My horse began to

back, slowly at first, and parallel with the track, as the car was nearing us. With one of my hands I was holding the reins, with the other signing to the gripman to stop. He did not stop. The side of the cable car ran across the foot of my horse, and the horse fell down, and the wagon fell down, and all of us, and the back wheel of the cable got hold of my hair, and I was hurt. When my horse first showed fright, the car was about fifty to seventy-five feet away,— probably more. The horse backed the wagon between sixteen and seventeen steps. The gripman and conductor were on the front of the car. Nothing to obstruct the view. My wagon was open and standing in front of the store. I did not see the conductor or gripman do anything to stop the car. I was whipping the horse to make him go ahead, but instead of that he backed and shook his head. Before the collision the two boys and the old man got out of the wagon.

The foregoing was upon the examination in chief, and is all there is upon this point. Upon cross-examination the plaintiff testified substantially as follows:

I heard no bell ring, or any noise of the approach of the car, which was a block away when I first saw it. The horse was headed north. I whipped him to make him go, but instead of going, he went back. I let the reins loose to let him go. Both of my boys and the old man who was riding with me got out before the collision, and the older boy, getting out first, said to the other he had better get out too. I whipped the horse three or four times, which was backing instead of going forward, at first parallel, and afterwards in the direction of the track. The horse turned round towards the track, and I kept the reins always loose. I tried to pull the horse from the direction of the track, but could not control him, and, in the meantime, the car came up to us, the horse having backed fifteen or sixteen paces or steps altogether, the wheels of the wagon making something of a curve in going backwards. At first the horse went back straight, but after a while the back wheels were turned a little, and when this curve was made, the back wheel was about two feet

from the track. The horse did not go back very fast, until just toward the last, when the car was near, when he went back fast. No one went to the head of the horse to try to stop him. The reason I did not get out of the wagon when my son did was because I did not want to leave the horse, and I thought he wouldn't get scared. After the horse had backed some distance, he then stood still. I didn't jump out then because I saw the car coming, and I tried to make the horse go. It was about a minute and a half from the time when the horse began to back when the collision oc-. curred. The horse was a gentle horse accustomed to being driven near the cable cars, and I never knew him to be frightened before, and I didn't think he was going to get scared this time. The car did not strike the wagon,—did not touch it,—but it struck the horse and upset the wagon, striking both front legs of the horse. The board that is alongside of the car was the part that struck the horse; don't know whether it was the running board or foot board, or the steps, as I didn't see it. I didn't jerk the lines, but held them loose in my hand; but I did jerk one of the lines twice, in order to turn the head of the horse around. When thrown from the wagon, I struck the ground between the track and the wagon, near the track, and the last wheel of the car got hold of my hair. Just before the horse was struck by the car, the horse was standing on the track and the wagon turned, and the horse was directly towards the rails of the track, standing at right angles to the track, but I do not know whether the horse was facing east or west, and the hind wheels were on the track.

'The last part, as well as some other portions of this testimony, are ambiguous, but it is just as found in the record.

In addition to this testimony, it should be said that a deposition of Joseph C. Ratcliff, a witness in behalf of the defendant, was read by the plaintiff after a motion for nonsuit was interposed, but it in no wise aids his case, but in many respects flatly contradicts his testimony, and in substantially every feature is in favor of the defendant.

There were five witnesses sworn in behalf of the defendant, none of whom were its employés,—three of whom, apparently honest and intelligent persons, were nonresidents of the city, but were passengers on the car, and the other two were witnesses standing in the highway who saw the accident, one of them being Jacobs, with whom the plaintiff was talking at the time the horse began to back. It is unnecessary to give in detail this evidence, but it tended strongly to negative the alleged negligence of the defendant, and to establish the fact that the injury was caused either by the negligent acts of plaintiff alone, or that it was the result of an unavoidable accident. All of these witnesses testified that the appearances were that plaintiff, until almost the moment of collision, had perfect control of his horse, and was apparently in the act of slowly backing so as to turn him about, and that it was only when the car got almost opposite the plaintiff that the horse, by a sudden movement, unexpected by any one, backed the wagon into the side of the car, after the front part passed by, and upset the wagon before the car could possibly be stopped, and that the motorneer checked the car as soon as possible after the first appearance of danger, and after it seemed that plaintiff was not fully able to control his horse.

The cause of action was based on the negligence of the defendant. There was an affirmative defense of contributory negligence of the plaintiff. This, though not put in issue, must be considered as traversed, for the trial proceeded as though a replication were on file. In attempting to state to the jury what the issues were, the court, in the first paragraph of the charge, said:

" The particular act of negligence charged is that through the fault and carelessness of the employés of the defendant company, they permitted one of its cars to run into and strike the said horse and wagon when they could easily have seen the plaintiff at a sufficient distance to have stopped said car before it struck the said wagon. The defendant denies any and all negligence whatever on its part or upon the part

of any of its employés.   The important question submitted
to you for your determination is, was the defendant company
guilty of negligence as charged in the complaint?"

It will be observed that this is not a case of a failure to
state the issues or the questions involved, or of omission by
the court properly to charge upon this point, or, in other
words, of mere nondirection.   If such was the objection to
this instruction, the appellant, unless it had, in apt time and
in an appropriate way, called the attention of the trial court
to the error for correction, could not, on appeal, avail itself
of such omission.   2 Thompson on Trials, sec. 2341; *D. &
R. G. R. R. Co. v. Ryan*, 17 Colo. 98; *Brown v. The People*,
20 Colo. 161.

The mistake here, however, is plainly one of misdirection,
in that the court erroneously stated to the jury what the
issues were, as made both by the pleadings and the evidence,
which necessarily misled the jury as to what they were to
determine.

As said by Judge Thompson, "If there is a mere tendency
in the charge to mislead the jury the defendant must ask
additional explanatory instructions, in order to avail himself
of its defectiveness in a court of error; but where it neces-
sarily and actually misleads the jury, it is a fatal error."
2 Thompson on Trials, sec. 2346; *Kenan v. Holloway*, 16
Ala. 53.

We have set out at length the testimony of the plaintiff,
and, after examining all the evidence with care, are of opinion
that, by the decided weight of the evidence, the plaintiff's
injuries were proximately and immediately caused by his own
acts, whether they were negligent or otherwise, or that the
collision, which resulted in the injuries, was an unavoidable
accident.   If there was nothing in the case but the insuffi-
ciency of the evidence to reverse the judgment, it might well
be vacated for that reason alone, but, taken in connection
with this misleading instruction, it ought not to stand.

The verdict is so manifestly against the weight of the evi-
dence as to indicate that the jury were controlled by some

improper motive in making their findings, and this misdirection of the court, we think, necessarily and actually misled the jury in arriving at their verdict.

Considering these two matters,—the misdirection of the court and the manifest insufficiency of the evidence to sustain the verdict,—we think the judgment of the trial court should be reversed, and the cause remanded.

*Reversed.*