## REESE *vs.* HARRIS.

[DETINUE FOR A SLAVE.]

1. *What title will support detinue.*—To maintain detinue, the plaintiff must have, at the time his action is commenced, a general or special property in the chattel sued for, and the right to its immediate possession; and if he has never had the actual possession, he cannot recover without showing a legal title.

2. *Common law presumed to exist in sister State.*—The courts of this State will presume that the common law is in force in a sister State, except so far as it is shown to have been changed or repealed by statute.

3. *Distributee, in Virginia, as at common law, cannot bring detinue.*—At common law, the title to the personal property of an intestate is cast upon his personal representative, and not upon his next of kin; and the statutes of Virginia, as shown in the record in this case, have not changed the common law in this respect; and consequently a sole distributee in Virginia, who has never had possession, before administration granted or distribution made, has not such a title to the personalty as will sustain detinue.

4. *Error without injury.*—If the evidence, as stated in the bill of exceptions, shows that the plaintiff has not such a title as will sustain his action, the appellate court will not, at his instance, examine into the correctness of the charges given or refused by the primary court; since, even if erroneous, no legal injury could have resulted to him.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. ANDREW B. MOORE.

DETINUE by Lucy Reese against Mary M. Harris, for a slave named Charles; pleas, *non detinet*, and the statute of limitations of six years.

All the evidence is set out in the bill of exceptions, but the view here taken of the case renders it unnecessary to give a detailed statement of it. The material facts are these:

Thomas Williams, who was the plaintiff's father, died in Brunswick county, Virginia, in January, 1787; having first made and published his last will and testament, dated December 26, 1786; and leaving a widow and two daughters, Sally and Lucy, the latter of whom is the present plaintiff. By this will, which was admitted to probate in said county of Brunswick on the 22d January, 1787, the testator bequeathed to his daughter Sally a negro woman, named Jane, or Jenny,

who was the maternal grandmother of the slave now sued for ; and also made provision for his son Samuel, who, however, died a few days before the testator, and left no issue.

After the testator's death, the widow dissented from the will, according to the laws of Virginia, and claimed her dower in her husband's estate; and for that purpose a bill in equity was filed. From the transcript of this suit, which is incorporated in the record, it appears that the bill was filed by said widow and her second husband (Lewis Holloway), and the present plaintiff and her then husband (John West), against the executor of said testator ; that the prayer of the bill was for a final settlement and division of the estate ; that commissioners were appointed by the court to make the division ; and that their report, by which the slave Jenny was allotted to Mrs. Holloway, was made on the 26th December, 1796, and was confirmed by the court. In these proceedings no notice is taken of Sally Williams, to whom (as above stated) the slave Jenny was bequeathed by the testator, and who had died, without issue, before the allotment of dower was made ; but the precise time of her death is not stated.

After Mrs. Holloway thus obtained possession of said slave, she removed with her and her increase, among whom was Viney, the mother of the slave now sued for, to Edgefield district, South Carolina ; and there, in 1820, she divided off said slaves among her children by her said second husband. On this division, Thomas Holloway, one of her sons, obtained the girl Viney, and brought here to this State in 1820 or 1821, where she afterwards gave birth to the boy Charles. The slaves remained in the possession of said Holloway up to 1846, when the boy Charles was sold as his property, and was purchased by the defendant's husband, who held and claimed him as his absolute property until his death ; and since that time defendant, as her husband's administratrix, has held and claimed said slave. Mrs. Holloway, the widow of said testator, died in Edgefield district, South Carolina, on or about the 10th December, 1847.

The defendant introduced evidence to sustain her plea of the statute of limitations, which was met by rebutting evidence on the part of the plaintiff; but this evidence, under the opinion of the court, is immaterial.

The plaintiff introduced as evidence certified copies of certain statutes of the State of Virginia, which may be thus described :—

1. "An act concerning wills, the distribution of intestates' estates, and the duty of executors and administrators" ; which went into operation on the first day of January, 1787, and the material sections of which are in these words :

"§ 21. When any widow shall not be satisfied with the provision made for her by the will of her husband, she may, within one year from the time of his death, before the general court, or court having jurisdiction of the probat of his will as aforesaid, or by deed executed in the presence of two or more credible witnesses, declare that she will not take or accept the provisions made for her by such will, or any part thereof, and renounce all benefit which she might claim by the same will ; and thereupon, such widow shall be entitled to one-third part of the slaves whereof her husband died possessed, which she shall hold during her life, and at her death they and their increase shall go to such person, or persons, to whom they would have passed and gone if such declaration had not been made ; and she shall moreover be entitled to such share of his other personal estate as if he had died intestate, to hold to her as her absolute property. But every widow not making a declaration within the time aforesaid, shall have no more of her husband's slaves and personal estate than is given her by his will."

" § 22. And that if any widow, possessed of a slave or slaves as of the dower of her husband, shall remove, or voluntarily permit to be removed out of this commonwealth, such slave or slaves, or any of their increase, without the consent of him or her in reversion, such widow shall forfeit all and every such slave or slaves, and all other the dower which she holds of the endowment of her husband's estate, unto the person or persons that shall have the reversion thereof ; any law, custom, or usage to the contrary notwithstanding."

"§ 25. When any person shall die intestate as to his goods and chattels, or any part thereof, after funeral debts and just expenses paid, if there be no child, one moiety, or, if there be a child or children, one-third of the surplus, shall go to the wife ;

but she shall have no more than the use for her life of such slaves as shall be in her share; and the residue of the surplus, and after the wife's death the slaves in her share, or, if there be no wife, then the whole of such surplus, shall be distributed in the same proportions, and to the same persons, as lands are directed to descend in and by an act of the general assembly, entitled 'An act directing the course of descents.' Nothing in this act contained shall be understood so as to compel the husband to make distribution of the personal estate of his wife, dying intestate. When any children of the intestate, or their issue, shall have received from the intestate in his lifetime any personal estate, by way of advancement, and shall choose to come into the distribution with the other persons entitled, such advancement shall be brought into hotchpot with the distributable surplus.

"§ 38. Executors and administrators, whether it be necessary for the payment of debts or not, shall, as soon as convenient after they are qualified, sell, at public sale, all such goods of their testator or intestate, specific legacies excepted, as are liable to perish, be consumed, or rendered worse by keeping; giving such credit as they shall judge best, and the circumstances of the estate will admit of, and taking bonds and good security of the purchasers; and shall account for such goods according to the sales. If more be sold than will pay the debts and expenses, the executor or administrator may assign the bonds for the surplus to those entitled to the estate, and be discharged as to so much."

"§ 39. If such perishing goods be not sufficient for paying the debts and expenses, the executor or administrator shall proceed, in the next place, to sell the other personal estate, disposing of the slaves last, until the debts and expenses be all paid; having regard to the privilege of specific legacies."

2. "An act directing the course of descents"; which also took effect on the first day of January, 1787, and of which the material sections are as follows:

"§ 1. Be it enacted," &c., "that henceforth, when any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to his kindred, male and female, in the following course —that is to say:

"§ 2. To his children, or their descendants, if any there be.

"§ 3. If there be no children, nor their descendants, then to his father.

"§ 4. If there be no father, then to his mother, brothers, and sisters, and their descendants, or such of them as there be."

The court charged the jury, among other things, that under the will of Thomas Williams, his daughter Sally took a vested right in the woman Jenny, which, at her death, belonged to her estate ; and if plaintiff had failed to show that there had been an administration on her estate, the legal title to the boy sued for was still in her estate, and therefore plaintiff could not recover. This charge, to which the plaintiff excepted, together with several other rulings of the court, is now assigned for error.

GEO. W. GAYLE and JNO. C. SNEAD, for the appellant, contended, that no administration was necessary on the estate of Sally Williams, because, 1st, plaintiff was her only heir, and after so great lapse of time, on the authority of Gantt's Adm'r v. Phillips, 23 Ala. 275, an administration and its settlement would be presumed ; 2dly, because the slave came from the widow's dower estate, which was obtained after the death of Sally Williams, and on the death of the tenant for life, under the 21st section of the Virginia statute "concerning wills", &c., went to the living heir of the testator ; and, 3dly, that under the 25th section of the same statute, personal property, like real estate, descends directly to the heirs.

WM. M. MURPHY, contra, insisted that the plaintiff did not show such a title as would sustain the action of detinue, and that the statutes of Virginia, as shown in the record, did not dispense with the necessity of administration on the estate of an intestate ; citing the following cases : Walden v. Payne, 2 Wash. R. 1 ; Sale v. Ray, 2 Hen. & Mun. 69–78 ; Lomax on Executors, vol. 2, p. 225 ; Miller v. Eatman, 11 Ala. 609; Hogan v. Bell, 1 Stew. 536 ; Price v. Talley's Adm'rs, 18 Ala. 25.

RICE, J.—To maintain detinue, the plaintiff must have, at the time the action is commenced, a general or special

property in the specific thing sued for, and the right to the immediate possession thereof. Unless both these rights concur, at the commencement of the suit, the action will not lie. 1 Chitty's Pl. 122.

Where the plaintiff has not had actual possession of the thing sued for, he must resort to proof of his title, in order to show his right of possession.—3 Starkie's Ev. 1483. And in such case, it is not sufficient to prove an *equitable* title. If he has never had possession, he cannot recover without showing a *legal* title.—Parsons v. Boyd, 20 Ala. R. 112.

At common law, neither the creditors nor next of kin were entitled to the personal property of an intestate. We must presume that law to be in force in Virginia, except so far as it has been repealed or amended by the statutes of that State. Those statutes, shown in the present record, do not cast the title of an intestate to *personal property* upon his next of kin, but upon his personal representative. The right given by those statutes to the next of kin, as to the personal property of the intestate, is a right to distribution ; and that right is given *sub modo*. The personal representative is authorized and required to pay the debts of the estate, expenses, &c. &c.; and, if necessary for such purposes, to sell all the personal property, Before any administration granted or distribution made, the right of a sole distributee, who has never had possession, to the personal property of the intestate, under those statutes, is not such a right as can entitle such distributee to recover any such property in detinue.—Jones v. Tanner, 7 Barn. & Cress. 542 ; 2 Wms. on Ex'rs, 1187 ; Vanderveer v. Alston, 16 Ala. R. 494.

The only right which the plaintiff has, or pretends to have, to the slave in controversy, is the right conferred by those statutes upon her as the sole heir-at-law and distributee of her sister, Sally Williams, or as the sole heir-at-law and distributee of her mother and of her said sister. In other words, the right asserted by the plaintiff, and relied on for a recovery in this action, is no more than the right of a sole distributee who has never had possession, to the personal property of the intestate. That right, as we have seen, can never entitle her to recover in this action. And as it is clear she has no other right, it is useless to inquire whether the court below did not err on

some other point ; for, if there was error, there could not be injury in legal contemplation.—Caruthers v. Mardis, 3 Ala. 599 ; Marshal v. Betner, 17 *ib.* 836 ; Gilmer v. Ware, 19 *ib.* 252.

Judgment affirmed.