(90 South. 795)
### GRIFFITH & WARREN v. BIGGERS.
### (6 Div. 492.)

(Supreme Court of Alabama. Oct. 27, 1921.)

**1. Detinue ⊗⇒18—Burden is on plaintiff to prove general or special property in goods, and their value.**

In detinue, where defendants pleaded the general issue, and thereby admitted possession of the property under Acts 1911, p. 33. § 1, the burden is on plaintiff to prove a general or special property, giving the right to immediate possession of the goods and their value.

**2. Detinue ⊗⇒18—Plaintiff's prima facie case casts on defendant burden of proving superior claim.**

Where plaintiff in detinue had established a prima facie case by proving a mortgage covering the goods, which was unpaid, and the value of the goods, the burden shifted to the defendants, who had admitted possession, to show a prior claim on or superior title to the goods, and that burden was not sustained by proof of a subsequent mortgage on the goods.

**3. Landlord and tenant ⊗⇒248(2)—Landlord's lien applies to advances by third party only if tenant knew of promise to pay them.**

The preference given to advances for which the landlord promised to pay, by Code 1907, § 4734, does not arise unless the tenant knew of the landlord's promise to pay the advances at the time he secured them, or thereafter ratified the landlord's act.

**4. Landlord and tenant ⊗⇒262(4)—Evidence held to show landlord was not liable for advances to tenant.**

Evidence that the tenant had no knowledge of any promise made by his landlord to secure advances to the tenant, which were represented by a note and second mortgage on the crop executed by the tenant alone, and that the landlord's only promise was to see that the advances were paid to the extent of the crop made by the tenant, did not show that the landlord became liable to pay the advances so as to entitle them to preferences over a prior crop mortgage.

**5. Appeal and error ⊗⇒1010(1)—Finding of judge on oral evidence not disturbed.**

The findings by the court in an action at law based on evidence will not be disturbed on appeal, since the judge who saw the witnesses and heard them testify was better able to judge their credibility than the Supreme Court.

Appeal from Circuit Court, Cullman County; O. Kyle, Judge.

Detinue by H. P. Biggers against Griffith & Warren, for a bale of cotton. Judgment for the plaintiff, and defendants appeal. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Affirmed.

A. A. Griffith, of Cullman, for appellants.

The landlord became legally bound for the indebtedness of the tenant Carnes to appellant, and the court erred in finding for the plaintiff. Section 4734, Code 1907; 103 Ala. 223, 15 South. 521; 11 Ala. 1067; 73 Ala. 325.

F. E. St. John, of Cullman, for appellee.

The court properly rendered the judgment for the plaintiff. Section 4734, Code 1907; 111 Ala. 433, 20 South. 453; 92 Ala. 612, 8 South. 823; 75 Ala. 44; 83 Ala. 266, 3 South. 443; 109 Ala. 40, 19 South. 733.

MILLER, J. H. P. Biggers sues Griffith & Warren in an action of detinue for a bale of cotton. The case was tried by the court without a jury, and there was judgment for plaintiff for the cotton, and its value was fixed at $100. This judgment is assigned as error.

J. W. Carnes rented land for the year 1920 from R. T. Edwards. This bale of cotton was raised by him on this land that year in Cullman county. Proof of value ranged from $75 to $110. After renting the land Carnes on January 15, 1920, gave plaintiff a mortgage on his crop of cotton and corn of the year 1920 in that county. It was signed by Carnes, duly recorded on January 16, 1920, and its execution attested and proven. The original was introduced in evidence. It secured a debt of $325, all of which was unpaid. After the execution of this mortgage to H. P. Biggers said Carnes executed a second mortgage on his crop to the defendants. It was not introduced in evidence, and the record fails to give its date. It was signed, as the testimony discloses, only by Carnes,

During the year Carnes obtained advances from defendants, Carnes testified:

"I gave Griffith & Warren a second paper, nobody never signed it with me, I just gave them my own paper. I made arrangements with them to trade with them. Edwards was not present at the time I made the arrangements. He did not have anything to do with making the arrangements. I made arrangements to trade with them, and gave them my own mortgage, and this mortgage was for my provisions. It was a second mortgage. I did not ask Mr. Edwards to arrange it for me. I traded with the firm of Bland, Warren & Gibbs the year before. I paid them out that year. I did not ask my landlord, Mr. Edwards, to arrange with these parties to furnish my provisions."

Rufus Edwards testified, as follows:

"I know Mr. J. W. Carnes. He was a tenant on my place in the year 1920. The relation of landlord and tenant existed between us. I made arrangements with Warren & Griffith to furnish Mr. Carnes for the year. Mr. Carnes spoke to me first of trading at Griffith & Warren. He said he wanted to trade there, and I told Mr. Warren to furnish him as much as he needed to make a crop, what he had to eat himself and for his mule, to make a crop on, just such things as he would have to have, and if he made it I would see that it was paid, but I didn't want to take it out of my own crop, but if he made it on his crop I would see it paid. Griffith & Warren furnished him to make his crop."

He also testified that he signed no writing and—

"I was to see it paid, that is, to the extent of the crop that Mr. Carnes made on my place."

Continuing, he said:

"I sold the bale of cotton to Griffith & Warren. First Mr. Carnes and I had it ginned, then me and Mr. Carnes applied it on this debt to Griffith & Warren, and received credit on his account to that extent. I did this as his landlord."

Allen Warren, a defendant, testified:

"I am a member of the firm of Griffith & Warren. I know Mr. Carnes. Griffith & Warren furnished Mr. Carnes his supplies with which to make a crop for the year 1920. Mr. Rufus Edwards requested us, and it was at his instance that we furnished Mr. Carnes. Mr. Edwards was Mr. Carnes' landlord for that year. Mr. Edwards, as landlord, came in and said to me for us to go ahead and furnish Mr. Carnes, and he would see it paid as far as the crop went. We charged the stuff that Carnes bought to J. W. Carnes. Mr. Edwards was not on the paper. Edwards just said he would see it paid as far as the crop went."

He further said:

"This was the cotton that was raised by Mr. Carnes. Mr. Carnes gave us a mortgage on it. Mr. Edwards did not sign the mortgage, and did not sign any note."

W. C. Griffith, a defendant, testified:

"I know Mr. Carnes. We took a mortgage on his crop in 1920. We took this mortgage at the request of Mr. Rufus Edwards, Carnes' landlord. Mr. Edwards requested us to take the mortgage, in case that Mr. Carnes should attempt to move any of the stuff off of his place, get it out of his control; and we took the mortgage at the request of Rufus Edwards, who is Carnes' landlord."

The defendants pleaded the general issue. This is an admission by them of the possession of the bale of cotton. Section 1 of act approved Feb. 28, 1911 (Acts 1911, p. 33).

[1-3] To recover, the burden is on plaintiff to prove a general or special property in the cotton, to own it or have the legal title to it, the right to immediate possession of it and its value. Reese v. Harris, 27 Ala. 301; Butler v. Central of Ga. Ry. Co., 190 Ala. 646, 67 South. 393. The plaintiff met this burden when it proved the cotton was raised by J. W. Carnes, that Carnes gave him the $325 mortgage introduced in evidence; that the mortgage was due and unpaid when the suit was commenced, and the value of the cotton. This made out a prima facie case for the plaintiff, and the burden shifted to the defendants to show a prior claim on, or superior title to, the property. In this the defendants failed by their mortgage given by Carnes. It was not introduced in evidence. The proof did not give its date and recordation. The testimony disclosed it as a second mortgage on the crop, given after plaintiff's mortgage. Plaintiff's mortgage was given January 15, 1920, and recorded the next day. The defendants claim a superior right or title to or claim on the cotton through the landlord, R. T. Edwards.

"A landlord has a lien, which is paramount to, and has preference over, all other liens, on the crop grown on rented lands for rent for the current year, and for advances made in money, or other thing of value, either by him directly, or by another at his instance or request for which he became legally bound or liable at or before the time such advances were made," etc. Section 4734, Code 1907.

This cotton was credited on the debt due defendants by Carnes. Was the landlord, R. T. Edwards, legally bound or liable to pay said debt for advances? If not, then the debt would not be a prior lien to plaintiff's mortgage on the cotton. If no liability rested on the landlord to pay the debt, then there is no room for the operation of the statute; and the lien of the landlord, having no landlord debt on which to rest, could have no existence. If there is no landlord debt authorized by statute, then there is no landlord's lien to be paramount to plaintiff's mortgage. The lien rests in contract, and must be based on a debt authorized by the statute. The debt must be contracted by the landlord with

a third party at or before the time the advances were made to the tenant at the request or instance of the tenant or with his approval or with his ratification after knowledge of the contract. Bell & Co. v. Hurst, 75 Ala. 44.

In Clanton v. Eaton, 92 Ala. 615, 8 South. 824, Justice Clopton wrote for this court:

"If, therefore, the landlord gratuitously, without the request or knowledge of the tenant, makes himself liable for advances, which the tenant understands he is procuring and purchasing on his own account and sole credit, this does not constitute advances made by the landlord through another in the meaning of the statute, nor will voluntary payment therefor constitute the tenant his debtor. The landlord cannot thus arbitrarily, and of his own will, without the concurrence of the tenant, acquire a lien on his crop declared by the statute to be paramount to all other liens.

"But this rule is subject to modification. Though there may have been no previous request, the tenant's ratification, after being informed that the landlord became liable to enable him to obtain the advances, will as effectually support the lien as if done at his special instance—the landlord paying the demand may recover as for money paid at the request of the tenant. Evans v. Billingsley, 32 Ala. 395."

[4] Did R. T. Edwards, the landlord, bona fide become legally bound or liable to the defendants for the advances made Carnes, his tenant, at or before the time such advances were made by the defendants to Carnes? Were the advances made to Carnes by the defendants on credit of Edwards at the request or instance of Carnes or with his approval or with his ratification after knowledge of the contract therefor between Edwards, the landlord, and the defendants? From the evidence these two questions can be answered positively and negatively. They are questions from the evidence for the court, sitting as a jury, to answer. The debt was charged to Carnes alone, the note for it was given by Carnes alone, the mortgage for it was given by Carnes alone. Carnes' testimony is to the effect that he alone made the arrangement for the advances, and he alone was responsible. Biggers testified, "I was to see it paid, that is, to the extent of the crop that Mr. Carnes made on my place."

[5] This being a case for the court as a jury to settle, we will not disturb his findings on the evidence. He saw the witnesses, heard them testify, and was better able than we are to judge of their credibility. It appears to us, after reading the testimony, that his judgment thereon is correct. Finney v. Studebaker Corp. of Am., 196 Ala. 422, 72 South. 54.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.