## MILLER vs. JONES' ADM'R.

[DETINUE FOR SLAVE BY ADMINISTRATOR AGAINST PURCHASER AT SHERIFF'S SALE UNDER ATTACHMENT AGAINST DISTRIBUTEE.]

1. *Charge of court construed with reference to evidence.*—Instructions to the jury must be construed in connection with the evidence in the cause ; and if they are correct when applied to the evidence, although erroneous as a universal proposition, they furnish no ground for a reversal of the judgment.

2. *Conclusiveness of judicial decisions.*—The correctness of a decision of the supreme court, reversing and remanding a cause, cannot be questioned, either in the primary court, or on a second appeal.

3. *Estoppel against setting up outstanding title.*—A distributee of an estate, holding possession of a slave for the estate, is estopped from denying the right of possession to be in that estate ; his declarations to that effect, made while

in possession of the slave, are evidence of the character of his possession ; and a purchaser at execution sale against him is estopped, as against the administrator of the estate, from setting up title in a third person, at least without connecting himself with it.

4. *Civil Code of Louisiana, as to heir's title to succession, construed.*—By the laws of Louisiana, on the death of a person possessed of or entitled to property, real or personal, the right to the property descends to his heirs ; but the heir is not obliged to accept the succession, and the right does not vest (that is, become fixed and without suspense) in him, until he does some act accepting the succession.

5. *Same, as to sale under attachment of heir's undivided share in succession.*—By the laws of Louisiana, an heir's undivided share in the succession may be seized and sold under attachment or execution ; but the seizure must be of the whole of his rights in the succession, subject to the charges with which they may be burdened, and the seizure and sale of the right and title of one of several heirs to a specific part of the property is a nullity.

6. *Relevancy of record as evidence.*—An inventory, made pursuant to the laws of Louisiana, on the petition of a widow to be allowed to renounce the community of acquits and gains between her and her late husband, including no slaves, and stating that the property specified was shown by the widow, and that no other property was shown, is not admissible evidence for the purchaser of a slave under sheriff's sale against a distributee, when sued by the husband's administrator.

7. *Judgment on verdict for plaintiff.*—In detinue for a slave, if the jury " find for the plaintiff, and assess the damages" at a specified sum, and thereupon judgment is rendered in his favor for the damages and costs only, there is nothing in the judgment of which the defendant can complain.


APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.


THIS action was brought by the administrator of Isaac Jones, deceased, against Thomas P. Miller, to recover a certain slave, which the defendant claimed under a purchase at sheriff's sale under attachment against Mrs. Julia Canfield, who was a daughter of plaintiff's intestate. The principal facts of the case may be found in the previous report of it, 26 Ala. 247 ; while the additional facts, as they appear in the present record, are as follows :

The defendant offered in evidence the deposition of one Fishburn, who testified, among other things, that he resided in Louisiana at the time of the death of Isaac Jones, and in the same neighborhood with him, and was a notary public ; that as such notary, and under an order of the proper court, he made an inventory of the estate of said Jones ; and that

a correct copy of said inventory is attached to his deposition. The plaintiff objected to so much of this answer as related to the inventory, "on the ground that it was irrelevant and incompetent." "The defendant stated, that he offered said answer and inventory, not only to show that said Jones had no title to the slave sued for, but also, if the court considered it inadmissible for that purpose, to show that Mrs. Canfield, notwithstanding her assertion that she held the slave for the estate of said Jones, did not in reality so hold said slave. The court decided, that it was inadmissible for any purpose, and excluded said answer and inventory from the jury; to which the defendant excepted."

The defendant then offered in evidence a transcript from the records of the probate court of the parish of East Feliciana, Louisiana, showing the proceedings had in said court, in the matter of the succession of said Isaac Jones, on the petition of his widow. The plaintiff moved the court to exclude from the jury the inventory embraced in said transcript, and the motion was granted; to which the defendant excepted.

This inventory is described in the opinion of the court.

The court charged the jury as follows: "That if they believed from the evidence that Mrs. Canfield held possession of the slave for the estate of Isaac Jones, deceased, her possession was the plaintiff's possession, and the plaintiff was entitled to recover in this action on such possession; and that Mrs. Canfield's declarations, whilst she was in possession of the slave, as to the character of her possession, were evidence, but not conclusive evidence, of the character of her possession. the weight of which it was for them to determine. That if Mrs. Canfield held possession of the slave for the estate of Jones, the right of possession enured to the plaintiff; and the defendant cannot, in this action, set up a title in any other person, unless he connects himself with it. That if Mrs. Canfield did not hold the slave for the estate of Jones, but the possession of the slave was her own possession, the defendant was entitled to a verdict. That if Mrs. Canfield did not, in fact, hold possession of the slave for the estate of Jones, then the plaintiff might show that the right of ownership was in the estate of Jones, and in himself as administrator, and

might recover on that ground in this action ; but that ground might be defeated, by the defendant's showing a better title in himself, or in any third person. That it was material, in this point of view, to consider what were the laws of Louisiana applicable to the case. That by the laws of Louisiana, on the death of a person possessed of or entitled to property, real or personal, the right to the property descended to his heirs ; but the heir was not obliged to accept the succession, and the right did not vest in the heir, until he did some act accepting the succession. That fifteen years continuous adverse possession of a slave, in Louisiana, was sufficient to give a title to the slave to such possessor, or those claiming under him, against the true owner ; and this prescription would run against a vacant succession."

The defendant excepted to each part of this charge, and then requested the following charges :—

" 1. That by the laws of Louisiana, on the death of a person in that State intestate, the right and title to any negroes he owned in the State at the time of his death vested in his children, if any, as his heirs-at-law ; and if the jury believe from the evidence that Isaac Jones was domiciled and died in Louisiana, and that the mother of the slave now sued for was then his property in that State, and that this slave was there soon afterwards born, and that Mrs. Canfield was one of the children of said Jones, the title vested in her and the other children of Jones ; and that if the slave was afterwards brought by her to Alabama, the defendant may successfully defend himself in this suit, by showing such title in the children of Jones."

" 2. That if the mother of said slave was held adversely to the heirs of said Jones, in Louisiana, for a certain number of years after his death, and before the birth of said slave ; and that said slave, from the time of her birth, was also held adversely ; and that these two periods, together, amounted to more than fifteen years adverse possession in Louisiana, in the widow of said Jones and those claiming under her,—then such adverse possession gave her, or those claiming under her, a good title to said negro in Louisiana."

" 3. That if the jury believe from the evidence that said slave, after the prescription of fifteen years was complete in

Louisiana, was clandestinely run off from that State, from the widow of said Jones, or those claiming under her, and was put in possession of Mrs. Canfield in Mississippi, and was afterwards brought by her to Alabama, and was levied on and sold as her property, and was bought by the defendant,— then he may defend himself, in this suit, by showing such outstanding title in the widow or those claiming under her."

"4. That when adverse possession is proved to have begun, the law presumes that it continued; and that this presumption can only be rebutted by proof that it had stopped.

"5. That the prescription (or limitation) of the laws of Louisiana runs against a vacant succession; that is, runs from the death of the owner, notwithstanding there is no administration on his estate."

The court refused the first charge asked, and gave the others, but with this qualification: "That if Mrs. Canfield held possession of said slave, in Alabama, for the estate of Jones, and not for herself, the plaintiff was entitled to recover on such possession alone, whether the true title was shown to be in him or not, and the defendant could not defeat a recovery, by showing title in the widow or heirs of Jones, or in any body else"; to which qualification the defendant excepted.

The jury returned the following verdict: "We, the jury, find for the plaintiff, and assess the damages at $1286 66;" and thereupon the court rendered judgment, "that the plaintiff have and recover of the defendant the said sum of $1286 66, together with the costs in this behalf expended."

The errors now assigned are, the rulings of the court on the evidence, the charge given, the refusal to give the several charges asked, and the rendition of judgment for the plaintiff.

WM. BOYLES and WM. G. JONES, for the appellant, made the following points:—1. The evidence shows that the heirs of Jones, after his death, instituted a suit in Louisiana for certain slaves, including the one now in controversy, and that this suit is yet pending. By that action, the heirs have accepted the succession purely and simply; and hence, under the laws of that State, there could be no succession to administer, and no letters of administration could properly issue. The unconditional heir becomes the immediate owner of all

the effects of the deceased, and is immediately liable for all the debts. It is only when the heir does not accept purely and simply, but with the benefit of inventory, that letters of administration are granted.—Civil Code, articles 866, 867, 870, 873, 875, 882, 884, 898, 928, 929, 935, 936, 939, 982, 1006, 1007, 1010, 1025 ; 12 Robinson's R. 262. It follows that, upon the death of Jones in Louisiana, intestate, the title to all his personal estate there immediately vested in his children, of whom Mrs. Canfield was one, as heirs, and continued in them unless they formally renounced it. To show this acceptance of the succession, or to vest the title in the heirs, no formal act was necessary ; but, if such an act was necessary, their suing for the property, or Mrs. Canfield's taking possession of it, was an act of unconditional acceptance. The title being thus vested in the heirs before the property was brought to Alabama, the grant of letters' of administration in Mobile vested no title in the plaintiff, and he cannot maintain the action.—1 Stew. 429 ; 5 J. J. Mar. Rep. 459.

2. The court ought to have admitted the inventories offered. They were shown to have been made by the court which had jurisdiction of the succession of Jones, and in the manner prescribed by the laws of Louisiana.

3. The court erred in refusing the first charge asked. The defendant claimed as a purchaser under Mrs. Canfield, and showed title in her and the other heirs of Jones. The former decision shows that this could be done. As Mrs. Canfield was one of the heirs of Jones, and in that way alone could legally claim any of his property, the presumption is that she held possession under that title.—19 La. 499.

4. The effect of the qualification to the other charges asked was, to take from the jury the evidence which tended to show title in Mrs. Canfield.

5. The action being detinue, a verdict and judgment for damages only is clearly erroneous.—Cummings v. Tindall, 4 S. & P. 357 ; Brown v. Brown, 5 Ala. 508 ; Haynes v. Crutchfield, 7 Ala. 189 ; Bell v. Pharr, 7 Ala. 807.

JOHN T. TAYLOR, *contra.*—1. The defendant below set up no title in himself, but relied on the outstanding titles of the

widow and heirs of Jones. If Mrs. Canfield received the possession of the slave for the estate of her father, and held it in no other way, publicly admitting the fact, she would be estopped, as against the administrator of Jones, from denying his title; and the defendant, claiming under his purchase at sheriff's sale of her interest, occupies her position.—26 Ala. 284 ; 23 Ala. 608, 788.

2. The charges of the court on the law of Louisiana were strictly correct.—Civil Code, articles 907, 940, 972, 982, 1005, 1006, 1034.

3. The inventory offered was entirely irrelevant.

4. It is now too late for the defendant to complain of the informality in the verdict and judgment.—16 Peters, 321 ; 4 Scammon, 200 ; 3 *ib*. 487 ; 21 Wendell, 19. If, however, the objection had been taken in time, it could not have prevailed, because the injury is to the plaintiff only, and not to the defendant.

RICE, C. J.—The charge of a court must be construed in connection with the evidence in the cause ; and if, when applied to that evidence, it is correct, although as a universal proposition it may be erroneous, it furnishes no ground for a reversal of the judgment.—McBride v. Thompson, 8 Ala. R. 650 ; Berry v. Hardman, 12 Ala. R. 604; Lockwood v. Nelson, 16 Ala. R. 294. Where the facts are clear and undisputed, the court may give the law of the case as applicable to them, without hypothesis.—Williams v. Shackelford, 16 Ala. R. 318. The correctness of the decision made by this court, in reversing a judgment and remanding a cause, is not to be questioned by the court to which that cause is remanded, nor by this court when the same cause is again brought here.—Price v. Price, 23 Ala. R. 609 ; Weaver v. Weaver, 23 Ala. Rep. 788.

When this case was previously in this court, it appeared, as it now appears in the present record, among the uncontroverted facts of the case, that the appellee was the administrator of the estate of Jones ; that the appellant claimed the slave in controversy through Mrs. Canfield ; that the mode in which he claimed to have obtained her right to the slave, was by his purchase at the sheriff's sale, on the 24th December,

1852, under an order of court made under the attachment, sued out by him against her, and levied on the slave whilst in her possession ; that the slave had been in possession of the appellant ever since his said purchase; and that the Civil Code of Louisiana was in evidence before the jury. This court then decided, (among other things,) that if Mrs. Canfield " actually held the possession of the slave for the estate of Jones, she would be estopped from denying the right of possession to be in that estate, because such a denial would be inconsistent with the relation she occupied"; " that her declarations to that effect, while in possession of the property, would be evidence as to the character of her possession ; and that " the appellant, claiming through her, and obtaining her right only, could not set up a title in a third person, at least without connecting himself with it."—See this case reported in 26 Ala. R. 247 ; and McCravey v. Remson, 19 Ala. R. 430; Lowremore v. Berry, 19 Ala. R. 130 ; Traylor v. Marshall, 11 Ala. Rep. 458 ; Carlysle v. Patterson, 3 Bibb, 93. This court then decided, also, that by the Civil Code of Louisiana, " slaves without title cannot be prescribed, except by a possession of fifteen years."

Upon the undisputed facts of the case, we think the former decision of this court in this cause, and the other cases above cited, justify and support every portion of the main charge of the court below complained of by the appellant, except the following sentence : " That by the laws of Louisiana, on the death of a person possessed of or entitled to property, real or personal, the right to the property descended to his heirs; but the heir *was not obliged to accept the succession,* and *the right did not vest* in the heir, until he did *some act* accepting the succession."

In determining whether that sentence of the charge can be made a ground for a reversal of the judgment rendered in this case, it becomes necessary to look into the Civil Code of Louisiana. According to that Code, succession signifies the transmission of the rights *and obligations* of the deceased to his heirs.—Art. 867. It also signifies the estate, rights *and charges*, which a person leaves at his death.—Art. 868. It not only includes the rights *and obligations* of the deceased, as they exist at the time of his death, but all that have accrued

thereto since the opening of the succession, and also *the new charges* to which it becomes subject.—Art. 869. And it signifies also *that right* by which the heir *can take* possession of the estate of the deceased, such as it may be.—Art. 870.

Article 940 of that Code declares, that "though the succession be acquired by the heir from the moment of the death of the deceased, *his right is in suspense,* until he decide whether he accepts or rejects it. *If the heir accepts,* he is considered as having succeeded to the deceased from the moment of his death ; *if he rejects it,* he is considered *as never having received it."* Article 970 declares that "no one *can be compelled to accept a succession,* in whatever manner it may have fallen to him, whether by testament or operation of law. He may, therefore, accept or renounce it." Article 982 declares, that " the simple acceptance may be either express or tacit. It is express, when *the heir assumes* the quality of heir in an unqualified manner, in some *authentic or private instrument,* or in some *judicial proceeding.* It is tacit, when *some act* is done by the heir, which *necessarily* supposes *his intention* to accept, and which he would have no right to do but in his quality of heir." Article 983 is in these words : " By the word *'act,'* used in the preceding article, is understood any writing, made with the intention of obliging himself, or contracting as heir, and not a simple letter or note, *still less a verbal declaration,* in which the person who is called to the succession may have styled himself the heir." Article 984 is in these words : " It is necessary that *the intention* should be *united to the fact,* in order that *the acceptance be inferred."* Article 990 provides that, as to acts which may be differently interpreted according to circumstances, it is necessary to distinguish acts of property from acts of administration, or *preservation,* &c. ; and that the time when these acts are done, must also be taken into consideration. Article 991 declares, that "acts which are *merely conservatory,* and the object of which is temporary, such as superintendence and administration, do not amount to an acceptance of the inheritance, unless the title and quality of heir should be therein assumed." Article 988 shows that acts of property, which are necessary for the preservation of the thing, do not necessarily amount to an acceptance of the succession. Article 1006 provides that

" the effect of the simple acceptance of the inheritance, whether express or tacit, is such that, when made by an heir of age, it binds him to the payment of all the debts of the succession, not only out of the effects which have fallen to him from the succession, but even personally, and out of his own property, as if he had himself contracted the debts, or as if he was the deceased himself; unless, *before acting as heir*, he make a true and faithful inventory of the effects of the succession, as here above established, or has taken the benefit treated of hereafter."

Our opinion is, that upon the evidence in this case, and as between the parties to this suit, the foregoing articles of the Civil Code of Louisiana warranted that sentence of the charge of the court hereinabove copied. As construed by us, that portion of the charge asserts, in substance, that by the laws of Louisiana, " no, one can be compelled to accept a succession"; and that, " though the succession be acquired by the heir from the moment of the death of the deceased, *his right is not vested* (that is, is not freed from a state of suspension), but is in suspense, until he decides whether he accepts or rejects it"; and that to free his right from its state of suspension *and vest (that is, fix) it in him as heir*, it is essential that he should do " some act accepting the succession." In view of the whole case, we think the jury must so have understood the charge; and, thus understood, it asserts nothing beyond what, in substance, is justified by the articles of the Civil Code of Louisiana above set forth. The renunciation, like the acceptance, when made, relates back to, and takes effect from, the day of the opening of the succession.—Buard v. Lemee, 12 Rob. La. Rep. 243. *The right to reject or accept* the succession may be *vested* in the heir by mere operation of law. But, as long as this right to *reject or accept* the succession exists in the heir, and has in no manner been determined by any act of the heir, there is no accuracy in saying the succession is *vested* in him; for it is a contradiction in terms to say that he may refuse to accept what the law has already actually vested in him.

But if it be conceded, that there was error in the sentence of the charge now under consideration, it is certain that the appellant was not injured by that error; because, under the

facts of this case, it was entirely immaterial whether the heirs
of Jones had accepted the succession or not. Conceding that
they had accepted it, yet if the slave in controversy was the
property of that estate, she was only one of several slaves
belonging to it ; and Mrs. Canfield was only one of the
several heirs of that estate, and the slaves and property of
the estate were wholly undivided. And although, under the
Civil Code of Louisiana, the undivided share of an heir in a
succession may be seized and sold under attachment or execu-
tion, yet the seizure must be *of the whole of his* rights in the
succession, subject to the charges with which they may be
burdened ; so that, by the effect of the sale, they would be
transferred to the purchaser with all the obligations of the
deceased ; and the seizure and sale under attachment at the
suit of a creditor, of the right and title of one of several heirs
to *a specific part* of the property inherited by him, is, accord-
ing to that Code, a nullity.—Mays v. Stroud, 12 Rob. La.
Rep. 105.

If the first charge asked by the appellant had been given
as asked, it would have entitled him to a verdict, although
he claimed the slave in controversy through Mrs. Canfield,
and although she actually held the possession of the slave for
the estate of Jones. It was, therefore, in direct conflict with
the law as declared in this very case when it was formerly
here, and with the law as hereinabove declared ; and was,
for that reason, properly refused, even if it was not objection-
able in any other respect. It is evident that it excluded from
the consideration of the jury the important question, whether
Mrs. Canfield held the slave for the estate of Jones, and
asserted, in effect, that the appellant, upon the facts embraced
in it, was entitled to a verdict, independent of that question.

Upon the undisputed facts of the case, the former decision
of this court in this cause, and the views hereinabove express-
ed, we have no hesitation in holding, that there is no error
which did or could injure the appellant, in the explanation
and qualification with which the court below accompanied the
last four charges given at the request of the appellant ; it
being among those uncontroverted facts, that the appellant
claimed the slave through Mrs. Canfield, and there being *a
total absence of any evidence tending to connect him* with any

outstanding title in Mrs. O'Donoghue or any other person.— See Traylor v. Marshal, 11 Ala. R. 458.

In the consideration of the question of the admissibility of the inventory offered by the appellant and excluded by the court, we must not only bear in mind the issue before the jury, but also the nature of that inventory, and the state of facts in evidence at the time it was offered and excluded.— Lay v. Lawson, 23 Ala. R. 377. Especially we must recollect that, among the uncontroverted facts then in evidence, was the fact that the appellant claimed the slave through Mrs. Canfield, by his aforesaid purchase at sheriff's sale under his attachment against her; that there was no evidence whatever tending to show that he had any connection with any outstanding title in any third person; and that in offering the inventory, he did not accompany it with any offer to adduce any evidence tending to connect him with any outstanding title. Hence, the simple question is, was the inventory, under the state of facts in evidence at the time it was offered by the appellant, *prima facie* relevant, or *prima facie* irrelevant for him. It does not appear that Mrs. Canfield or the appellee was a party to it; nor that either of them had any notice of it until after the commencement of the present suit, or any opportunity to contest it. It purports to have been made under an authorization from the parish judge of the parish of East Feliciana, obtained under the petition of the widow of Jones, filed for the purpose of allowing her to renounce the community of acquits and gains between her and her husband, &c. It does not mention any slave; but, after mentioning several articles of personal property, and stating that the property was "shown by Mary Jones, widow of the deceased," it proceeds thus: "and there bring *no other property shown,* the inventory, amounting to eighty-eight dollars eighty-seven and a half cents, was closed in presence of the witnesses aforesaid." After carefully considering the argument made for the appellant, we are unable to discover the relevancy of this inventory; and we feel bound to sustain the action of the court below in excluding it. The most plausible ground in relation to it, taken by the appellant, is, that it was admissible "to show that said Isaac Jones had no title to the negro sued for." But this ground cannot be sustained, for it is well

13

settled, that a record is not evidence of any fact which can only be inferred from it by argument.—McCravey v. Remsen, 19 Ala. Rep. 430. And the inventory does not even profess to state as a fact, that said Isaac Jones owned at his death no other property than was therein mentioned, but only that no other property was *shown* to the appraisers.

The counsel for the appellant assume, in their argument, that two or more inventories were excluded by the court below. The one above noticed is the only one which the record shows to have been excluded ; and as that was properly excluded, of course there could be no error in excluding the answer of the witness Fishburn, so far as it related to it.

In such a suit as the present, the appellate jurisdiction of this court is confined to a revision of the rulings and action of the court below, and does not extend to a revision of the correctness of the mere results which the jury have attained from the evidence before them. If no error exists in the rulings and action of the court below, we cannot reverse the judgment, upon the mere ground that the verdict was not authorized by the evidence, and that the damages were excessive. Nor can we reverse the judgment, upon the mere assumption, not sustained by the record, that the damages assessed include the value of the chattel sued for. The only remaining inquiry, therefore, in the present case, is, whether upon the defendant's appeal, the mere fact that the jury have not found the value of the chattel sued for, but have only said in their verdict, " we, the jury, find for the plaintiff, and assess the damages at twelve hundred and eighty-six 66-100 dollars," disentitles the plaintiff to an affirmance of the judgment actually rendered ; a judgment not for the chattel, nor for its value, but only for the damages assessed by the jury, and the costs.

The general rule is conceded, that the verdict for the plaintiff, in the action of detinue, should ascertain the value of the chattel sued for, as well as the damages for its detention ; and that the judgment should be for the chattel, or for its value if it cannot be had, and the damages for its detention, and costs. But the sole reason for requiring the value of the chattel to be found, which the defendant can be permitted to urge as the foundation of any right in him, is, that he may by

paying that value be enabled to discharge himself from the operation of a *distringas*, in the event the chattel recovered is incapable of being produced. It is only for his protection, in such an event, that he has any right to insist that the value of the chattel recovered should be found. That reason does not exist in such a case as the present, where there is no recovery of the chattel. He does not need any such protection in such a case. And however wise, and promotive of good, in general, the rule above conceded may be; yet, the defendant has no right to claim that it shall be made to operate beyond the object of its creation. He has full protection in the conduct of the plaintiff, who has taken judgment only for the damages and costs; who in this court insists on an affirmance, and who, by procuring an affirmance, waives and abandons all right and claim, founded on said verdict, or existing at the commencement of this suit, to the chattel sued for, and elects to take only the damages assessed and costs.—Haynes v. Crutchfield, 7 Ala. R. 189; Bell v. Pharr, 7 Ala. R. 807; Buckner v. Haggin, 3 Monroe, 59.

We do not wish to be understood as intimating, that *the plaintiff* could not successfully have prosecuted an appeal from the judgment of the court below in this case; nor that the defendant would not be entitled to a reversal, on this his appeal, if the judgment had been rendered in favor of the plaintiff for the chattel sued for. But we do decide, that where a plaintiff brings detinue for one chattel only, and the jury find for him, and assess the damages at a specified sum; and thereupon a judgment is rendered in his favor, not for the chattel, nor for its value, but only for the damages assessed and costs,—the defendant, on appeal, has no right to a reversal of the judgment, for the mere omission of the jury to find the value of the chattel. Such a judgment does not, and cannot, injure the defendant; and even if it be erroneous, the error is rather beneficial than injurious to him—in this, that it relieves him from liability to the plaintiff for the chattel or its value, and leaves him liable only for the damages assessed and costs.—Alford v. Samuel, 8 Ala. R. 95; Wilroy v. Maxey, 9 Porter's Rep. 410; Elliott v. Gray, 6 Porter's Rep. 447; Moore v. Coolidge, 1 Porter's Rep. 280.

The appellant shows no cause for reversal of the judgment of the court below, and it must be affirmed.